THE NEWS AND OBSERVER PUBLISHING COMPANY, INC.; THE NORTH CAROLINA FIRST AMENDMENT FOUNDATION, INC.; AND THE NORTH CAROLINA PRESS ASSOCIATION v. SAMUEL H. POOLE; DEAN W. COLVARD; C. C. CAMERON; WILLIAM A. KLOPMAN AND HELLON SENTER

No. 269PA90

(Filed 10 January 1992)

1. **State § 1.2 (NCI3d) — Public Records Law — SBI reports of Poole Commission**

When the SBI submitted its investigative reports to the Poole Commission, which had been appointed by the president of the University of North Carolina system of higher education to investigate and report on alleged improprieties in the men's basketball program at N.C. State University, the reports lost

NEWS AND OBSERVER PUBLISHING CO. v. POOLE

[330 N.C. 465 (1992)]

their N.C.G.S. § 114-15 exemption from the Public Records Law and became Commission records subject to disclosure under the Public Records Law to the same extent as other Commission records.

**Am Jur 2d, Records and Recording Laws §§ 46.15, 46.16, 46.19.**

2. **Appeal and Error § 147 (NCI4th)— preserving question for review**

Defendants properly preserved for appeal the issue of whether SBI reports to the Poole Commission were exempt from public disclosure under N.C.G.S. § 126-22, which provides that certain "personnel file information" gathered by state agencies concerning their employees or applicants for employment is exempt from the Public Records Law, where defendants in their answer asserted a sixth defense that "the Commission's records contain confidential personnel records protected from public inspection under N.C. Gen. Stat. § 126-22," and defendants assigned error to the trial court's failure to find and conclude that information from state employee personnel records should be excluded from its disclosure order. N.C. R. App. P. 10(c)(1).

**Am Jur 2d, Appeal and Error §§ 545, 600.**

3. **State § 1.2 (NCI3d)— Public Records Law—personnel file exception**

In order for personnel information about state employees or applicants for employment to be exempted from disclosure under the Public Records Law by N.C.G.S. § 126-22, it must meet two requirements: (1) it must have been gathered by an individual's employer (including the Office of State Personnel) or considered in an individual's application for employment; and (2) the information must relate to at least one of the enumerated activities by the employer with respect to the individual employee or applicant for employment.

**Am Jur 2d, Records and Recording Laws § 46.19.**

**What constitutes personal matters exempt from disclosure by invasion of privacy exemption under state freedom of information act. 26 ALR4th 666.**

4. **State § 1.2 (NCI3d) — Public Records Law — personnel information given to SBI and Poole Commission**

Personnel information about state employees first gathered by the employing state agency or the Office of State Personnel and turned over to the SBI and the Poole Commission during the investigation of the men's basketball program at N.C. State University remains protected from disclosure under the Public Records Law by N.C.G.S. § 126-22 because of the language "wherever located and in whatever form" in that statute.

**Am Jur 2d, Records and Recording Laws § 46.19.**

5. **State § 1.2 (NCI3d) — Public Records Law — agency not subject to Open Meetings Law — no exemption for minutes**

There is no exemption from the Public Records Law for the minutes of meetings of an agency not subject to the Open Meetings Law.

**Am Jur 2d, Administrative Law § 229; Records and Recording Laws §§ 46.15, 46.19.**

6. **State § 1.2 (NCI3d) — Public Records Law — minutes of executive sessions — exception in Open Meetings Law — inapplicable to Poole Commission**

Minutes of the Poole Commission's meetings were not excepted from the Public Records Law by the provision of the Open Meetings Law permitting minutes of an executive session to be withheld from public inspection if such inspection "would frustrate the purpose of the executive session," N.C.G.S. § 143-318.11(d), because the Commission was not a "public body" subject to the Open Meetings Law. Furthermore, public inspection of the minutes will not frustrate the Commission's proceedings where, at the time plaintiffs sought the minutes, the Commission had completed its investigation of the men's basketball program at N.C. State University and had reported to the UNC system's chief executive officer; the Commission's findings and recommendations had been relayed to the UNC Board of Governors; and no further action or disposition by any higher ranking university officer was pending.

**Am Jur 2d, Administrative Law § 229; Records and Recording Laws §§ 46.15, 46.19.**

7. **State § 1.2 (NCI3d) — Public Meetings Law — attorney-client privilege**

Only those portions of the minutes of the Poole Commission's meetings revealing written communications from counsel to the Commission are excepted from disclosure under the Public Records Law attorney-client privilege provided in N.C.G.S. § 132-1.1.

Am Jur 2d, Records and Recording Laws § 46.19.

8. **State § 1.2 (NCI3d) — Public Records Law — minutes of Poole Commission — personnel records exception inapplicable**

Minutes of meetings of the Poole Commission were not exempt from disclosure as public records by N.C.G.S. § 126-22, the statute exempting from the Public Records Law certain personnel information gathered by state agencies concerning their employees or applicants for employment, because the Commission was not the employer of any state employees questioned or mentioned in the meeting minutes.

Am Jur 2d, Records and Recording Laws § 46.19.

What constitutes personal matters exempt from disclosure by invasion of privacy exemption under state freedom of information act. 26 ALR4th 666.

9. **State § 1.2 (NCI3d) — Public Records Law — no deliberative process privilege or preliminary draft exceptions**

No "deliberative process privilege" exception to the Public Records Law will be recognized as a matter of public policy to exempt from public inspection preliminary draft reports prepared by members of the Poole Commission and submitted to the president of the UNC system of higher education. Nor is it necessary to infer a "preliminary draft" exception to the Public Records Law to prevent the legislature from intruding into the decision-making processes of other government branches in violation of Art. I, § 6 of the N.C. Constitution.

Am Jur 2d, Records and Recording Laws § 46.15.

What are "records" of agency which must be made available under state freedom of information act. 27 ALR4th 680.

10. **Pleadings § 34 (NCI3d) — Public Records Law — Poole Commission records — denial of amendment to add Attorney General as defendant**

The trial court did not abuse its discretion in the denial of plaintiffs' motion to amend their complaint to add the Attorney General as a defendant in this action under the Public Records Law to compel the disclosure of documents made or received by the Poole Commission in its investigation of the men's basketball program at N.C. State University where plaintiffs moved to amend three months after obtaining new information from deposition testimony and only three days before the action was scheduled for hearing; plaintiffs were not prejudiced because they prevailed in their action to enforce the Public Records Law; and plaintiffs' contention that, had the motion been allowed, they could have obtained an injunction prohibiting the Attorney General from further assigning the SBI to conduct an unauthorized investigation for the Poole Commission was speculative at best.

**Am Jur 2d, Parties §§ 182, 183, 190, 200; Records and Recording Laws § 46.15.**

ON discretionary review prior to a determination by the Court of Appeals, pursuant to N.C.G.S. § 7A-31, from a judgment entered by *Barnette, J.*, at the 18 April 1990 Civil Session of Superior Court, WAKE County, ordering defendants to disclose documents for public inspection. Defendants appeal. Plaintiffs cross-appeal the trial court's denial of a motion to amend their complaint. Heard in the Supreme Court 12 November 1990.

*Everett, Gaskins, Hancock & Stevens, by Hugh Stevens, for plaintiff-appellees.*

*Lacy H. Thornburg, Attorney General, by Andrew A. Vanore, Jr., Chief Deputy Attorney General, and K. D. Sturgis, Assistant Attorney General, for defendant-appellants.*

EXUM, Chief Justice.

This action is brought under the Public Records Law, N.C.G.S. Chapter 132, and seeks to compel defendants to disclose for public

inspection certain written materials.[1] These materials were com-
piled on behalf of a commission appointed by the president of the
University of North Carolina system of higher education. The Com-
mission's purpose was to investigate and report on certain alleged
improprieties relating to the men's basketball team at North Carolina
State University (NCSU), one of the system's component univer-
sities. Defendant Poole was chairman of the Commission, which
became popularly known as the "Poole Commission," and which
we will refer to as the Commission. Defendants Colvard, Cameron
and Klopman were members of the Commission; and defendant
Senter assisted the Commission in its work.

The records sought to be disclosed are investigative reports
prepared for the Commission by special agents of the State Bureau
of Investigation (SBI), Commission minutes, and draft reports
prepared by individual Commission members.

Defendants concede that the Commission is a state agency
and that the records sought, except for the investigative SBI reports,
are public records as these terms are defined by the Public Records
Law, N.C.G.S. § 132-1 (1991).[2] They resist disclosure, nevertheless,
on the ground that the records sought, other than the SBI reports,
are protected by certain statutory and public policy exceptions
to the Public Records Law. They contend the SBI reports were
not public records because of the exemption to the Public Records
Law contained in N.C.G.S. § 114-15. The trial court concluded none
of the statutes relied on by defendants protects the records from
disclosure. It ordered disclosure of all the records. The question
before us is the correctness of this decision. We conclude the deci-
sion is essentially correct but needs modification. We, therefore,
modify and affirm the trial court's judgment. We affirm the trial
court's denial of plaintiffs' motion to amend their complaint.

---

1. N.C.G.S. § 132-9 provides, in part, "Any person who is denied access to
public records for purposes of inspection, examination or copying may apply to
the appropriate division of the General Court of Justice for an order compelling
disclosure, and the court shall have jurisdiction to issue such orders."

2. N.C.G.S. § 132-1 defines public records as follows:

"Public record" or "public records" shall mean all documents, papers,
letters, maps, books, photographs, films, sound recordings, magnetic or other
tapes, electronic data-processing records, artifacts, or other documentary
material, regardless of physical form or characteristics, made or received
pursuant to law or ordinance in connection with the transaction of public
business by any agency of North Carolina government or its subdivisions.

## NEWS AND OBSERVER PUBLISHING CO. v. POOLE

[330 N.C. 465 (1992)]

### I.

The facts are essentially not in dispute. In January 1989 C.D. Spangler, Jr., President of the University of North Carolina system of higher education (UNC) appointed the Commission members named above. The Commission, using SBI agents, conducted its investigation between January and August 1989.

On 26 July 1989 Frank A. Daniels, Jr., publisher of *The News and Observer*, wrote Spangler requesting that all documents made or received by the Poole Commission be made available for public inspection as provided by the Public Records Law. Spangler responded that he did not possess the records and referred Daniels to Poole. Daniels wrote to Poole requesting disclosure of the documents. Poole, through Chief Deputy Attorney General Andrew A. Vanore, counsel for the Commission, declined to disclose any of the documents. On 23 October 1989 defendant Poole did disclose his preliminary report.

On 23 October 1989 plaintiffs filed the action now before us, alleging in a verified complaint that defendants' refusal to permit access to the documents in question violated Section 6 of Public Records Law, N.C.G.S. § 132-6 (1991).[3] Plaintiffs prayed that the trial court order defendants to make the documents available for inspection and copying, as provided by that statute.

Defendants opposed the requested order, pleading in answer several statutory exceptions to the Public Records Law: N.C.G.S. § 114-15 (SBI records); N.C.G.S. § 126-22 (1987) (state employee personnel records); N.C.G.S. § 132-1.1 (1991) (attorney communications); and N.C.G.S. § 143-318.11(d) (Supp. 1991) (part of the Open Meetings Law). Defendants also pleaded certain "public policy" considerations in defense of their refusal to disclose.

On 2 May 1990 plaintiffs moved to amend their complaint to add Lacy H. Thornburg, Attorney General of North Carolina, as a defendant. The motion was denied.

---

3. N.C.G.S. § 132-6 provides, in part:

> Every person having custody of public records shall permit them to be inspected and examined at reasonable times and under his supervision by any person, and he shall furnish certified copies thereof on payment of fees as prescribed by law.

At the hearing on the merits the trial court considered the pleadings, depositions, affidavits, and exhibits. Based upon these materials the trial court made extensive findings of fact and conclusions of law. The pertinent facts found together with certain other undisputed pertinent facts of record will be summarized in our discussion of the legal issues brought forward on appeal.

## II.

Defendants first contend the trial court erroneously concluded that the SBI investigative reports were public records. For the reasons explained below, we hold the SBI investigative reports became public records subject to the Public Records Law when the SBI submitted them to and they became a part of the records of the Commission.

## A.

During its organizational meetings the Commission determined it would need assistance in conducting its investigation. After much discussion and consultation with counsel, the Commission ultimately decided to employ SBI special agents to assist its investigation. Upon the Commission's request, the Attorney General directed the SBI to assign agents to assist the Commission. The SBI assigned three agents.

The SBI agents interviewed approximately 160 people and summarized the interviews in written reports which, with attachments, they submitted to the Commission. After the agents submitted their reports, William Dowdy, chief investigative agent for the SBI, who worked on the investigation, forwarded copies of all the materials gathered and produced by the agents to Wake County District Attorney C. Colon Willoughby in the event they might contain evidence of criminal misconduct. Willoughby concluded the information did not merit criminal prosecution.

Commission members treated the SBI reports and attachments as confidential. Near the investigation's end, however, two UNC officials who were not on the Commission, University Vice Presidents Arthur Padilla and Raymond Dawson, were allowed to review all Commission records, including the investigative reports. Poole, as custodian of the records, allowed the inspection.

B.

The Public Records Law, N.C.G.S. § 132-6, provides:

> Every person having custody of public records shall permit them to be inspected and examined at reasonable times and . . . shall furnish certified copies thereof on payment of fees prescribed by law.

Defendants claim this provision has no application to the SBI investigative reports because N.C.G.S. § 114-15 provides in part:

> All records and evidence collected and compiled by the Director of the Bureau and his assistants shall not be considered public records within the meaning of G.S. § 132-1, and following
> . . . .

The trial court concluded that the Commission's investigation, although conducted by SBI agents, was not of a type specifically authorized by section 114-15. The trial court then held:

> The provision of G.S. 114-15 concerning the non-public status of "records and evidence collected and compiled" by the S.B.I. is directed primarily toward the records of criminal investigations, and in any event extends no further than the records of investigations which are specifically authorized by G.S. 114-15. Therefore, since the investigation in question was not specifically authorized by G.S. 114-15, or by any other statutory provision, the records compiled on behalf of the Commission by the S.B.I. agents do not fall under the exemption, and are public records as defined by G.S. 132.1. Accordingly, they must be disclosed.

[1] We do not reach the question whether the SBI investigation was authorized. We hold, simply, that whether the investigation was authorized or not, when the SBI submitted its investigative reports to the Commission, they became Commission records. As such they are subject to the Public Records Law and must be disclosed to the same extent that other Commission materials must be disclosed under that law.

In *News & Observer v. State ex rel. Starling*, 312 N.C. 276, 281, 322 S.E.2d 133, 137 (1984), this Court held that N.C.G.S. § 114-15 exempted from the Public Records Law records of a criminal investigation conducted by the SBI at the request of a district attorney. The records sought there resulted from an investigation

expressly authorized by section 114-15. Plaintiffs attempt to distinguish *Starling*. They argue that the scope of the exemptive provision in section 114-15 does not reach the investigative materials sought in the case *sub judice*, because these materials are not the product of an investigation enumerated or authorized by section 114-15. Plaintiffs further argue that even if the exemption extended to records of all SBI investigations authorized by statute, it would not extend to the materials here, because the SBI investigation on behalf of the Commission was not expressly authorized by any statute. The trial court agreed with these arguments. We think *Starling* is distinguishable, but for other reasons.

Plaintiffs do not seek disclosure of investigative reports in the possession of the SBI. They seek disclosure of copies of such reports in the possession of the Commission. The issue before us is whether these reports which have become Commission records continue to be exempt from the Public Records Law pursuant to section 114-15. We conclude that they do not.

To extend the statutory exemption to SBI investigative reports which have been placed in the public domain is like unringing a bell — a practical impossibility. When such reports become part of the records of a public agency subject to the Public Records Act, they are protected only to the extent that agency's records are protected. When the SBI investigative reports here became Commission records, they, as Commission records, ceased to be protected by section 114-15. They became subject to disclosure under the Public Records Law to the same extent as other Commission records.

The legislature knows how to extend the scope of protection of confidential records beyond the confines of the agency which maintains them. N.C.G.S. § 126-22, which provides that certain personnel information about state employees is not subject to public inspection, includes the clause "wherever located and in whatever form." Where the legislature has not included such broad protection for SBI records in section 114-15, we will not engraft it.[4]

---

4. The legislature also can protect SBI records outside the SBI's possession by so providing in statutes governing records of other agencies. For example, N.C.G.S. § 7A-377, which authorizes the SBI to assist in investigations for the Judicial Standards Commission, provides that such investigative materials are confidential.

The legislature's mandate for open government supports our holding. By enacting the Public Records Law, "the legislature intended to provide that, as a general rule, the public would have liberal access to public records." *Starling*, 312 N.C. at 281, 322 S.E.2d at 137. The Court of Appeals has also noted the broad acceptance of this policy.

> "[G]ood public policy is said to require liberality in the right to examine public records." 66 Am. Jur. 2d, *Records and Recording Laws*, § 12 at 349 (1973). "While some degree of confidentiality is necessary for government to operate effectively, the general rule in the American political system must be that the affairs of government be subject to public scrutiny." Comment [*Public Access to Government-Held Records: A Neglected Right in North Carolina*], 55 N.C.L. Rev. 1187, 1188 (1977).

*Advance Publications, Inc. v. Elizabeth City*, 53 N.C. App. 504, 506, 281 S.E.2d 69, 70-71 (1981).

## C.

Defendants also contend the SBI reports and attached documents obtained from university records and elsewhere are protected from public inspection under N.C.G.S. § 126-22, which exempts from the Public Records Law certain information about a state employee gathered by his or her employer.

[2] Plaintiffs contend defendants failed to preserve this issue for appeal. We disagree. In their answer defendants asserted a sixth defense that "the Commission's records contain confidential personnel records protected from public inspection under N.C. Gen. Stat. §§ 126-22." The trial court's order made no reference to this defense. Defendants assigned error to "[t]he trial court's failure to find and conclude that State employee personnel records, including information gathered which relates to charges against a state officer or employee or to such person's demotion, termination or other personnel action, should be excluded from its disclosure order." North Carolina Rule of Appellate Procedure 10 was amended effective 1 July 1989 to delete the requirement that assignments of error be supported by exceptions. The Rule now provides that an assignment of error is sufficient "if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references."

N.C. R. App. P. 10(c)(1). Defendants' assignment of error Number Nineteen satisfies these requirements. This issue was properly presented to the trial court and preserved for appeal; therefore, we will consider it.

[3] Chapter 126, Article 7 of the General Statutes is titled "The Privacy of State Employee Personnel Records." Neither this Court nor the Court of Appeals has had occasion previously to apply this statute. Section 126-22 provides in pertinent part:

> Personnel files of State employees, former State employees, or applicants for State employment shall not be subject to inspection and examination as authorized by G.S. 132-6. For purposes of this Article, a personnel file consists of any information gathered by the department, division, bureau, commission, council, or other agency subject to Article 7 of this Chapter which employs an individual, or considered an individual's application for employment, or by the office of State Personnel, and which information relates to the individual's application, selection or nonselection, promotions, demotions, transfers, leave, salary, suspension, performance evaluation forms, disciplinary actions, and termination of employment wherever located and in whatever form.

Under the plain meaning of the statutory language, any information satisfying the definition of "personnel file" is excepted from the Public Records Law. In order for personnel information to be protected by section 126-22, it must meet two requirements: (1) it must have been gathered by an individual's employer (including the Office of State Personnel) or considered in an individual's application for employment; and (2) the information must relate to at least one of the enumerated activities by the employer with respect to the individual employee or applicant for employment.

The state employees who were the subject of SBI reports and Poole Commission meetings were employed by NCSU. Under section 126-22, only personnel information about those employees gathered by the employing state agency is exempt from public inspection under section 126-22. In the case of the individuals investigated, neither the Poole Commission nor the SBI was the employing state agency. Unless, therefore, the information gathered by the SBI for the Commission was first gathered by the employing state agency or the Office of State Personnel, it is not exempt

under section 126-22 and is subject to disclosure under the Public Records Law.

**[4]** Personnel information first gathered by the employing state agency or the Office of State Personnel and turned over to the SBI and the Poole Commission remains protected because of the language "wherever located and in whatever form" in section 126-22. On remand the trial court must examine the documents *in camera* to decide if any part of them falls within the statutory "personnel file" definition so as to be protected.

### III.

Defendants next assign error to the trial court's ruling that minutes of the Poole Commission's meetings are public records. Defendants contend the minutes are excepted from the Public Records Law because the meetings were lawfully closed to the public. Defendants also contend the minutes are protected because they contain privileged "deliberative process" communications, discussions of individual state employee personnel matters, and attorney-client communications.

### A.

The trial court took notice of the parties' stipulation that the Poole Commission was not a "public body" as defined by the Open Meetings Law, N.C.G.S. § 143-318.10 (Supp. 1991), so that the Commission lawfully closed its meetings to the public. However, the trial court held that the minutes of those same meetings are public records as defined in N.C.G.S. § 132-1 and are subject to disclosure under the Public Records Law.

Section 132-1 defines "public records" as documentary material "made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions." The statute defines subject agencies and subdivisions as "every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government." N.C.G.S. § 132.1.

Defendants have admitted that with the exception of the SBI investigative reports, all documents made or received by the Poole Commission are public records within the literal meaning of N.C.G.S.

§ 132-1. Also, defendants have not assigned error to the trial court's ruling that the Poole Commission, the UNC Board of Governors, the UNC administration, the Attorney General, and the SBI are all "public agencies" within the scope of section 132-1.

N.C.G.S. § 143-318.10, commonly known as the Open Meetings Law, provides for public access to the proceedings of public bodies. The definition of a "public body" under this statute is narrower than the definition of "public agency" under the Public Records Law. A "public body" is defined in section 143-318.10(b) as a political entity, composed of two or more members, which (1) is authorized to exercise one of several enumerated governmental functions, and (2) was established by one of several enumerated devices: the State Constitution, a legislative enactment, a resolution pursuant to statutory procedure, a local ordinance or resolution, or an executive order of the Governor or comparable action by a State office or department head as defined in other North Carolina statutes. Defendants and plaintiffs have stipulated that the Poole Commission was not a "public body" under the statute because it was not established by any of the means enumerated in section 143-318.10(b)(2).

[5] Defendants first argue that the Public Records Law does not apply to minutes from meetings of an agency not subject to the Open Meetings Law. Defendants cite no authority to support this proposition. We decline to create such a broad exception to the Public Records Law where the legislature has not elected to do so. The Public Records Law and the Open Meetings Law are discrete statutes, each designed to promote in a different way openness in government. There is no suggestion in either statute that an agency not subject to one is, *ipso facto*, exempt from the other.

[6] Defendants argue in the alternative that minutes of the Commission's meetings are excepted from the Public Records Law by the following provision in the Open Meetings Law:

Minutes of Executive Session —

Notwithstanding the provisions of G.S. 132-6, minutes and other records made of an executive session may be withheld from public inspection so long as public inspection would frustrate the purpose of the executive session.

N.C.G.S. § 143-318.11(d) (Supp. 1991). Other provisions in section 143-318.11 help define what meetings are executive sessions pro-

tected by section 143-318.11(d). Section 143-318.11(a) provides that a "public body may hold an executive session and exclude the public" for several, specifically defined purposes, including:

(5) To consult with an attorney, to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer.[5]

. . . .

(8) To consider the qualifications, competence, performance, character, fitness, conditions of appointment, or conditions of initial employment of a public officer or employee or prospective public officer or employee; or to hear or investigate a complaint, charge or grievance by or against a public officer or employee.

Defendants argue that because consultations with counsel and discussion of personnel matters by a "public body" would fall within the executive session exceptions quoted above, minutes from Commission meetings containing such material should likewise be excepted from public inspection, even though the minutes are not from a meeting of a "public body" covered by the Open Meetings Law.

The trial court examined the minutes sought here and first concluded that had the Poole Commission been subject to the Open Meetings Law, it could not have held executive sessions under sections 143-318.11(a)(5) or (8). The trial court further held that considering the contents of the minutes and the other materials that it was ordering disclosed, the minutes did not meet the threshold test of section 143-318.11(d), because "public inspection of the minutes at this time would not frustrate the purpose of the executive session even if G.S. 143-318.11(a) did apply."

We affirm the trial court ruling on the ground, simply, that the Commission was not subject to nor governed by the Open Meetings Law. Not being burdened by this law's provisions, the Commission is not entitled to its benefits.

---

5. This subsection was amended in 1991, after the appeal in this case, to allow privileged consultation with an attorney "employed or retained to represent the public body, to the extent that confidentiality is required in order to preserve the attorney-client privilege between the attorney and the public body." N.C.G.S. § 143-318.11(a)(5) (1991).

We agree, nevertheless, with the trial court's second reason for rejecting defendants' arguments based on the Open Meetings Law.

The legislature's intent in enacting the Open Meetings Law is made clear in section 143-318.9, titled "Public policy," which provides:

> Whereas the public bodies that administer the legislative, policy-making, quasi-judicial, administrative, and advisory functions of North Carolina and its political subdivisions exist solely to conduct the people's business, it is the public policy of North Carolina that the hearings, deliberations, and actions of these bodies be conducted openly.

Section 143-318.11 sets forth specific exceptions to the general rule that the public be allowed access to government meetings. Section 143-318.11(d) also provides an exception to the Public Records Law for minutes, which would ordinarily be public records, "so long as public inspection would frustrate the purpose of the executive session." This standard requires consideration of time and content factors, allowing courts to tailor the scope of statutory protection in each case. Courts should ensure that the exception to the disclosure requirement should extend no further than necessary to protect ongoing efforts of a public body, respecting the policy against secrecy in government that underlies both the Public Records Law and the Open Meetings Law.

The Commission had completed its work and disbanded at the time plaintiffs filed this action. The nature and purpose of the meetings at issue are relevant in determining the extent of protection, if any, provided in section 143-318.11(d) for minutes of proceedings that are no longer ongoing. This Commission met to conduct an administrative investigation, to suggest solutions to problems it discovered in athletics and academics, and to help restore the integrity of a public university. At the time plaintiffs sought the minutes, the Commission had completed its proceedings and had reported to Spangler, the university system's chief executive officer. Also, Spangler had relayed the Commission's findings and recommendations to the UNC Board of Governors. No further action or disposition by any higher ranking university officer was pending. By then the Commission's work, or any results depending on that work, could not have been compromised by public inspection of the minutes.

Defendants contend that if minutes revealing the deliberative processes of public agencies are not permanently excepted from the Public Records Law, knowledge by the agencies that public scrutiny may occur will chill free and frank decision-making. While we recognize this policy argument, we must yield to the decision of the General Assembly, which enacted several specific exceptions to the Public Records Law, none of which permanently protects a deliberative process like that of the Commission after the process has ceased.[6]

We therefore affirm the trial court's ruling that section 143-318.11(d) does not authorize defendants to withhold Commission minutes.

## B.

Defendants next contend the minutes are exempt from disclosure because they contain privileged attorney-client communications and discussions of individual state personnel matters. Plaintiffs contend defendants failed to preserve these issues for appeal. We disagree for the same reasons discussed in Part II concerning the issue of state employee personnel records. Just as defendants properly preserved that issue, they also preserved the attorney-client privilege issue.[7] Therefore, we will consider both issues.

[7] The Public Records Law provides only one exception to its mandate of public access to public records: written statements to a public agency, by any attorney serving the government agency,

---

6. Defendants argue that this "absurd interpretation" will outlaw the use of wastebaskets in state government, because N.C.G.S. § 132-3 makes disposing of public records a misdemeanor. This argument overlooks section 132-3, which refers state agencies to N.C.G.S. § 121-5 for procedures allowing the disposal of records having no value to the government or the public. That section allows state agencies to submit to the Department of Cultural Resources an inventory of records and a schedule for disposing of certain documents. Once such a schedule is approved, "destruction or disposal of records in accordance with its provisions shall be deemed to have met the requirements of G.S. 121-5(b)." N.C.G.S. § 121-5(c) (1986).

7. In their answer to plaintiffs' complaint filed with the trial court, defendants asserted in the seventh defense that during its meetings the Commission "had privileged communications with counsel." Following the trial court's order, defendants filed assignments of error at the conclusion of the record on appeal. Assignment Number Eighteen assigns error to "[t]he trial court's failure to find and conclude that the S.B.I. records and evidence, the minutes of closed meetings, and the draft reports are protected from disclosure under the Public Records Law by deliberative process, investigative, and attorney client privilege."

made within the scope of the attorney-client relationship. N.C.G.S. § 132-1.1 (1991). The statute provides that even those communications shall become public records subject to disclosure three years after the communication was received by the public agency. *Id.*[8]

Although the Public Records Law does not provide an exception for records of statements by a public agency to its attorney in the scope of the attorney-client relationship, defendants contend that such statements lie at the heart of the attorney-client privilege. Confidential communications between attorney and client, from either one to the other, are protected by the traditional attorney-client privilege mandated by common law. *E.g.*, *State v. Tate*, 294 N.C. 189, 193, 239 S.E.2d 821, 824 (1978). So far this Court has not recognized an attorney-client privilege for public entity clients, and it is unclear whether the traditional privilege should be so extended. Lory A. Barsdate, *Attorney-Client Privilege for the Government Entity*, 97 Yale L.J. 1725, 1734 (1988). Most courts that have applied such a privilege have not considered its origin but have merely assumed it exists. *E.g.*, *Hearn v. Rhay*, 68 F.R.D. 574, 579 (E.D. Wash. 1975); *People ex rel. Department of Pub. Works v. Glen Arms Estate, Inc.*, 230 Cal. App. 2d 841, 854, 41 Cal. Rptr. 303, 310 (1964).

We need not decide here whether public agencies in North Carolina enjoy the traditional attorney-client privilege in all contexts. That issue is not before us. In the context of what such agencies must disclose pursuant to the Public Records Law, the

---

8. N.C.G.S. § 132-1.1 provides as follows:

Public records, as defined in G.S. 132-1, shall not include written communications (and copies thereof) to any public board, council, commission or other governmental body of the State or of any county, municipality or other political subdivision or unit of government, made within the scope of the attorney-client relationship by any attorney-at-law serving any such governmental body, concerning any claim against or on behalf of the governmental body or the governmental entity for which such body acts, or concerning the prosecution, defense, settlement or litigation of any judicial action, or any administrative or other type of proceeding to which the governmental body is a party or by which it is or may be directly affected. Such written communication and copies thereof shall not be open to public inspection, examination or copying unless specifically made public by the governmental body receiving such written communications; provided, however, that such written communications and copies thereof shall become public records as defined in G.S. 132-1 three years from the date such communication was received by such public board, council, commission, or other governmental body.

statute itself defines the scope of the privilege. *See* note 8. Under this definition only those portions of the Poole Commission meeting minutes revealing written communications from counsel to the Commission are excepted from disclosure under the Public Records Law.

The trial court did not squarely address defendants' claim of attorney-client privilege. The trial court concluded, rather, that the Open Meetings Law exception, N.C.G.S. §§ 143-318.11(d) and 143-318.11(a)(5), to the Public Records Law, which allows a public body to go into executive session to consult with its attorney, would not apply to any of the Poole Commission minutes, which the trial court had inspected *in camera.*

The trial court erred in not further considering whether the minutes were protected by the Public Records Law attorney-client privilege provided in section 132-1.1 On remand the trial court must determine whether that provision protects any portions of any of the Commission minutes.

[8] We now turn to defendants' contention that minutes of the Commission's meetings are exempt from disclosure under N.C.G.S. § 126-22. As discussed in Part II, that statute provides that certain personnel information gathered by state agencies concerning their employees or applicants for employment is exempt from the Public Records Law. The Poole Commission was not the employer of any state employees questioned or mentioned in the meeting minutes. Therefore, as we explained in Part II, the minutes do not meet the definition of "personnel file" information set forth in section 126-22 because the information was not "gathered" by the employer state agency. Because the minutes do not fall within the statutory definition of "personnel file," they are not protected by the statute.

## IV.

[9] Finally, defendants contend the trial court erred in ordering the disclosure under the Public Records Law of draft reports that two Commission members wrote at the conclusion of the investigation and submitted to President Spangler. Defendants base this assignment of error on their argument that a public policy exception to the Public Records Law should be recognized in the form of a "deliberative process privilege" and that this privilege should protect preliminary draft reports prepared by members of the Commission and submitted to President Spangler. Defendants cite decisions from other jurisdictions in which courts have held preliminary

documents exempt from public inspection. *Ernest & Mary Hayward Weir Foundation v. United States*, 508 F.2d 894 (2d Cir. 1974); *Wilson v. Freedom of Information Com'n*, 181 Conn. 324, 435 A.2d 353 (1980); *Lopez v. Fitzgerald*, 76 Ill. 2d 107, 390 N.E.2d 835 (1979); *Kottschade v. Lundberg*, 280 Minn. 501, 160 N.W.2d 135 (1968); *Sanchez v. Board of Regents*, 82 N.M. 672, 486 P.2d 608 (1971).

The relevant statutes in those jurisdictions, however, differ significantly from North Carolina's Public Records Law. Those decisions are, therefore, not persuasive. Our statute contains no deliberative process privilege exception. Whether one should be made is a question for the legislature, not the Court.

Defendants also argue that we must infer a "preliminary draft" exception to the Public Records Law to prevent the legislature from intruding into the decision-making processes of other government branches, in violation of the separation of powers provision in Article I, Section 6 of the North Carolina Constitution. Defendants have cited no controlling authority in support of this assignment of error, and failed to cite or rely on the state Constitution when they raised this argument before the trial court. The only decision cited by defendants bearing on the separation of powers doctrine, *State ex rel. Wallace v. Bone*, 304 N.C. 591, 286 S.E.2d 79 (1982), involved two branches of government interfacing with each other. That decision is inapposite here. The Public Records Law allows intrusion not by the legislature, or any other branch of government, but by the public. A policy of open government does not infringe on the independence of governmental branches. Statutes affecting other branches of government do not automatically raise separation of powers problems.

We, therefore, affirm the trial court's ruling that the draft reports of individual Commission members are subject to disclosure under the Public Records Law.

## V.

[10]  Plaintiffs cross-assign as error the trial court's denial of their motion to amend their complaint to add the Attorney General as a defendant. Plaintiffs allege the Attorney General assigned SBI agents to conduct an investigation not authorized by law for the purpose of circumventing the Public Records Law. The trial court's ruling was prejudicial error, plaintiffs contend, because it precluded plaintiffs from seeking an appropriate remedy, such as an injunction

prohibiting further unauthorized deployment of the SBI, and because without the Attorney General as a defendant plaintiffs were unable to discover information in support of their claim that the unauthorized investigation was conducted for an improper purpose.

On 2 March 1990, three days before this action was heard by the trial court, plaintiffs filed the motion to amend. The motion stated that the claims against the Attorney General arose from new information obtained from depositions taken on 29 November 1989. Defendants responded that plaintiffs had unduly delayed filing their motion and had no basis in law to seek the amendment. In denying plaintiffs' motion to amend, the trial court concluded that justice did not require the amendment because the issue of whether the Attorney General exceeded statutory authority was properly raised by the original pleadings.

Rule 15(a) of the North Carolina Rules of Civil Procedure provides that once an action has been placed on the trial calendar, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." As defendants note, a motion to amend is left to the discretion of the trial court, and its decision will not be disturbed on appeal absent a clear showing of abuse of discretion. *Smith v. McRary*, 306 N.C. 664, 671, 295 S.E.2d 444, 448 (1982); *Patrick v. Williams*, 102 N.C. App. 355, 360, 402 S.E.2d 452, 455 (1991).

Among proper reasons for denying a motion to amend are undue delay by the moving party and unfair prejudice to the non-moving party. *Patrick v. Williams*, 102 N.C. App. at 360, 402 S.E.2d at 455. Plaintiffs here moved to amend their complaint three months after obtaining new information from deposition testimony, and three days before the action was scheduled for hearing. Although the trial court did not reach the issue of delay and possible prejudice to defendants, the circumstances would have supported a denial of plaintiffs' motion on those grounds.

Furthermore, we agree with the trial court's reasoning that denying the motion to amend caused no prejudice to plaintiffs. Plaintiffs have prevailed in their action to enforce the Public Records Law. They have offered no argument why, if they prevailed in compelling disclosure under the law, they would be prejudiced by not gaining access to additional evidence supporting the same result. Their contention that, had the motion to amend been allowed, they

could have obtained an injunction prohibiting the Attorney General from further deploying the SBI without authority is speculative at best. At the time the action was filed, and certainly at the time of the motion to amend, an injunction was unnecessary, because there was no chance that the Attorney General would assign the SBI to further assist the Poole Commission, a body which months before had completed its work and disbanded.

Plaintiffs have not shown an abuse of discretion by the trial court in denying their motion to amend. This assignment of error is overruled.

CONCLUSION

In conclusion, we hold that in the absence of clear statutory exemption or exception, documents falling within the definition of "public records" in the Public Records Law must be made available for public inspection. Copies of SBI investigative reports submitted to the Poole Commission are beyond the exemption contained in section 114-15 and are protected from public inspection only to the extent that other Poole Commission records are so protected. Documents not falling within the definition of the "personnel file" exception in N.C.G.S. § 126-22, because they are not gathered by the employer or for the reasons enumerated, are not protected by that statute. Minutes of the Poole Commission's meetings are not excepted from the Public Records Law under N.C.G.S. § 143-318.11 because the Commission was not subject to that statute and public inspection of the minutes will not frustrate the Commission's proceedings. Finally, with respect to any protection from disclosure provided by the attorney-client privilege, only written communications to a public agency by its attorney are excepted from public inspection under the circumstances set out in N.C.G.S. § 132-1.1. We refuse to engraft upon our Public Records Law exceptions based on common-law privileges, such as a "deliberative process privilege," to protect items otherwise subject to disclosure.

For the reasons stated, except for the trial court's failure to address and apply the exception in N.C.G.S. § 132-1.1 for attorney communications and the exception in N.C.G.S. § 126-22 relating to state personnel records, we affirm the trial court's order requiring disclosure of the materials in question. We remand the matter to the trial court with directions to apply these Public Records Law exceptions to the materials in question and to exclude any

materials protected by them from its order requiring disclosure.[9] Pending the trial court's disposition on remand, the materials in question will remain sealed.

Modified and affirmed. Remanded.

---

9. This directive does not mean that we believe any portion of the records sought is protected by these statutory exceptions to the Public Records Law. We examined the documents under seal only to the extent necessary to review the trial court's rulings. A more detailed review of the evidence in light of this opinion is more properly the work of the trial court.