IN RE: SEARCH WARRANTS ISSUED IN CONNECTION WITH THE INVESTIGATION INTO THE DEATH OF NANCY COOPER

No. COA08-1280

(Filed 6 October 2009)

**1. Appeal and Error— mootness—order sealing search warrants—short duration—capable of repetition**

A case concerning the denial of access to sealed search warrants was not moot where the warrants were sealed for thirty days and there was a reasonable expectation that the issue was capable of repetition.

**2. Public Records— search warrants—sealed by court order— no abuse of discretion—no right of access**

Plaintiffs (a newspaper and a television station) did not have a public records right of access to search warrants that had been sealed under a court order. The court did not abuse its discretion by sealing the warrants and related affidavits where the court found that the release of the information contained therein would undermine an ongoing homicide investigation and that sealing the warrants for a limited time was necessary to ensure the State's right to prosecute and defendant's right to a fair trial.

**3. Public Records— search warrants and affidavits—sealed— no abuse of discretion**

The trial court did not abuse its discretion by issuing orders sealing search warrants and affidavits under North Carolina law.

**4. Constitutional Law— First Amendment—right of access— search warrants**

A newspaper and a television station did not have a First Amendment right of access to sealed search warrants and affidavits. Search warrants and related documents fail the first prong of the test in *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (1989).

**5. Constitutional Law— North Carolina—open courts— sealed documents**

The trial court properly applied the open courts provision of the North Carolina Constitution to the issue of access to sealed search warrants and affidavits. The qualified right of public access to criminal records is outweighed by compelling, counter-vailing governmental interests.

Appeal by Plaintiffs from judgment entered 31 July 2008 and 18 August 2008 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 6 May 2009.

*Everett Gaskins Hancock & Stevens, LLP, by Hugh Stevens, C. Amanda Martin, and Michael J. Tadych, for Plaintiffs-Appellants.*

*Attorney General Roy A. Cooper, by Special Deputy Attorney General W. Dale Talbert, for the State.*

BEASLEY, Judge.

Capitol Broadcasting Company, Incorporated, and The News and Observer Publishing Company (Plaintiffs) appeal orders issued on 31 July 2008 and 18 August 2008, denying their motions to unseal three search warrants and attendant papers related to the Cary Police Department's homicide investigation into the death of Nancy Cooper. We affirm.

On 16 July 2008, the Cary Police Department submitted an application for a search warrant, supported by a probable cause affidavit, to the trial court based upon an investigation into the homicide of Nancy Cooper. The application for the search warrant specified the

premises, persons, and vehicles to be searched. The search warrant permitted the person of Bradley Graham Cooper, Nancy Cooper's husband, his residence at 104 Wallsburg Court in Cary, North Carolina, as well as two of his vehicles to be searched for "evidence of a crime and the identity of a person participating in a crime" under N.C. Gen. Stat. § 14-17.

After the trial court found that there was sufficient probable cause for the issuance of a search warrant, the trial court issued an *ex parte* sealing order, pursuant to N.C. Gen. Stat. § 132-1.4, subsections(e) and (k), that "this motion, order, search warrant, search warrant application and return results thereof be sealed and held by the Wake County Clerk of Court for an initial period of thirty (30) days[.]" The trial court ruled:

1. That the information contained in the search warrant, application and possible return results thereof fall within the purview of NCGS § 132.1.4(c).

2. That the release of this information will jeopardize the right of the State to prosecute a defendant or the right of a defendant to a fair trial or will undermine an ongoing or future investigation within the meaning of NCGS § 132.1.4(e).

On 21 July 2008, the Cary Police Department submitted an application for a second search warrant, also accompanied by a probable cause affidavit, to the trial court. The second search warrant permitted the search of Bradley Cooper's business office, located in Morrisville, North Carolina. The trial court issued the second search warrant and an *ex parte* order sealing the search warrant, search warrant application, and the return results for an initial period of thirty days on 21 July 2008. This sealing order was also issued pursuant to N.C. Gen. Stat. § 132-1.4, subsections (e) and (k). The trial court cited the same statutes, N.C. Gen. Stat. § 132-1.4, subsection (c) and (e), in the second sealing order which allow for sealing this information.

On 25 July 2008, the "State by and through the District Attorney" made a motion requesting the court to seal the application for a third search warrant. The application for the third search warrant permitted the search of several computers, financial documents, and files belonging to Bradley Cooper and relating to a homicide and disposal of a human body. The State argued:

[t]hat to publicly disclose the basis for the search warrant, or an inventory of matters recovered from the computers, might

hamper or impede this investigation and/or may release information that could adversely affect persons who are not charged with committing a crime and materially prejudice further adjudicative procedures involving this investigation and any subsequent prosecution.

In response to the State's motion, the trial court issued an order on 25 July 2008, sealing the search warrant application, search warrant, and return results for thirty days. This order stated that the sealed documents were within the purview of an Administrative Order entered by the Senior Resident Superior Court Judge and the Chief District Court Judge, effective on 20 May 2008, as well as N.C. Gen. Stat. § 132-1.4(e). The trial court found that "the sealing of these items would preserve the integrity of the ongoing above referenced criminal investigation." The 20 May 2008 Administrative Order outlined the procedure for the processing and secure custody of investigative orders and search warrants issued by judicial officials in Wake County and was in effect for all three sealing orders. The Administrative Order provided, in pertinent part, that:

1. Law enforcement officers seeking to seal a search warrant should notify the District Attorney's Office to obtain a Motion and Order to Seal Search Warrant to be presented to the judge at the time the search warrant is sought.

2. If the judge determines that it is appropriate to seal the search warrant, he shall execute the order. The order should state the length of time for which the search warrant is to be sealed.

3. The Court's copy of the search warrant and application for the search warrant should be placed in an envelope. . . . The envelope and the order sealing the search warrant shall be delivered to the Head of the Criminal Division within the Clerk's office.

4. The Clerk shall establish a log, listing by caption search warrants that have been sealed, the date the order to seal was signed, the date the order expires and the name of the assistant district attorney assigned to the case. The log will be available for public inspection . . . .

On 28 July 2008, Plaintiffs filed a motion to vacate the trial court's 16 July 2008 order, sealing the search warrants and related documents, and requesting public access to those documents. On 30 July 2008, Plaintiffs filed a supplement to the motion to unseal search war-

rants to include the second and third search warrants, filed 21 July 2008 and 25 July 2008 respectively. The trial court denied this motion on 31 July 2008, finding and concluding, in relevant part, that:

> In each instance the court concluded by a preponderance of the evidence . . . that immediate release of the information to the public could and would undermine the ongoing investigation and would jeopardize the potential success of the investigation to determine the identity of the perpetrator and to obtain sufficient evidence to convict that perpetrator of this homicide. The court is still of that opinion. . . .
>
> . . . .
>
> The court is the gatekeeper of these interests. . . . (1) The right of the public to the assurance that a homicide investigation will be professionally and properly conducted and that the investigation will not be undermined by the imprudent premature release of information which could jeopardize its success; (2) The right of the public to information concerning the progress of this important homicide investigation; and, (3) The public's right to insure that an accused receives a fair trial.
>
> . . . .
>
> Based upon the information contained in the sealed warrants, the court finds and concludes that the release of this information is premature, since the homicide investigation is ongoing and no perpetrator has been charged. The court finds by a preponderance of the evidence that release of this information today would likely risk and jeopardize the right of the State to prosecute the perpetrator. The court further finds that the release of the information may prevent a person hereafter accused from receiving a fair and impartial trial due to potential hearsay information about the offense that may prejudice the public against the accused.

The trial court continued "the temporary sealing orders in effect for the period set forth in the orders."

On 15 August 2008, the State and the Assistant District Attorney filed motions to extend the sealing of all three search warrants and related documents, on the grounds that "to publicly disclose the search warrant . . . might hamper or impede this ongoing investigation and . . . could adversely affect persons who are not charged with

committing a crime and materially prejudice further adjudicative proceedings involving this investigation. . . ." On 18 August 2008, the trial court entered an order extending all three search warrants until 2 September 2008, citing the reasons set forth in its 31 July 2008 order.

Plaintiffs appeal from the orders entered by the trial court on 31 July 2008 and 18 August 2008, denying their request to unseal the three search warrants.

_____

Plaintiffs argue that the trial court erred by denying their motions to vacate the sealing orders entered on 16 July, 21 July and 25 July 2008. Plaintiffs contend that the sealing orders should have been vacated based on public records statutes, North Carolina common law, Article I, § 18 of the North Carolina Constitution, and the First Amendment to the United States Constitution. Plaintiffs also argue that the trial court "did not properly apply the legal and constitutional principles and presumptions emanating from these sources." We disagree and affirm the trial court's orders.

[1] Although the contents of the sealing orders have been unsealed and released to the public, we hold that this case is not moot. "This case falls within the exception to the mootness rule which permits judicial review when the dispute is 'capable of repetition, yet evading review.' " *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989) (quoting *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 55 L. Ed. 310, 316 (1911)). This exception is applicable if "(1) the challenged action is too short in duration to be fully litigated and (2) there is a reasonable expectation that the same party will be subjected to the same action again." *Id.* (citation omitted). The search warrants and attendant documents were sealed for a thirty day period. "[T]his kind of secrecy order is usually too short in duration to be litigated fully." *Id.* There is also a reasonable expectation that the issue of a party being denied access to a search warrant and related documents due to a sealing order would be capable of repetition. Therefore, we address the merits of the case.

[2] The present case raises issues about whether the press and public have a right of access to search warrants and related documents in criminal proceedings and the extent of this right. Although the issues in this case have not previously been specifically addressed, *Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 515 S.E.2d 675 (1999) and *Baltimore Sun*, 886 F.2d 60 set forth standards

which guide our analysis. "The judicial officer's decision to seal . . . is subject to review under an abuse of discretion standard." *Baltimore Sun*, 866 F.2d at 65.

Plaintiffs first argue that after search warrants are returned by law enforcement agencies to the clerk, they become public records which "must be open to public inspection absent extraordinary circumstances." "Access to public records in North Carolina is governed generally by our Public Records Act, codified as Chapter 132 of the North Carolina General Statutes. Chapter 132 provides for liberal access to public records." *Virmani*, 350 N.C. at 462, 515 S.E.2d at 685. "The Public Records Act permits public access to all public records in an agency's possession *'unless* either the agency or the record is specifically exempted from the statute's mandate.' " *Gannett Pacific Corp. v. N.C. State Bureau of Investigation*, 164 N.C. App. 154, 156, 595 S.E.2d 162, 164 (2004) (quoting *Times-News Publishing Co. v. State of N.C.*, 124 N.C. App. 175, 177, 476 S.E.2d 450, 452 (1996)).

Under N.C. Gen. Stat. § 132-1 (2007), " 'public records' shall mean all documents, papers, letters . . . regardless of physical form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions." Generally, "[r]ecords of criminal investigations conducted by public law enforcement agencies [and] records of criminal intelligence information compiled by public law enforcement agencies . . . are not public records as defined by G.S. 132-1." N.C. Gen. Stat. § 132-1.4(a) (2007). However, N.C. Gen. Stat. § 132-1.4(k) (2007) provides that:

> [t]he following court records are public records and may be withheld only when sealed by court order: *arrest and search warrants that have been returned by law enforcement agencies*, indictments, criminal summons, and nontestimonial identification orders.

"Absent 'clear statutory exemption or exception, documents falling within the definition of 'public records' in the Public Records Law must be made available for public inspection.' " *Virmani*, 350 N.C. at 462, 515 S.E.2d at 685 (quoting *News & Observer Publ'g Co. v. Poole*, 330 N.C. 465, 475, 412 S.E.2d 7, 13 (1992)). Therefore, Plaintiff's general argument is valid in that these types of documents are ordinarily considered public records and are open for the public's review. However, "even though court records may generally be public records . . . a trial court may, in the proper circumstances, shield por-

tions of court proceedings and records from the public[.]" *Id.* at 463, 515 S.E.2d at 685 (citations omitted).

"Nothwithstanding the broad scope of the public records statute . . . our trial courts always retain the necessary inherent power granted them by Article IV, Section 1 of the North Carolina Constitution to control their proceedings and records in order [to] ensure that each side has a fair and impartial trial." *Id.* Nonetheless, trial courts should not withhold public records from public inspection unless it "is required in the interest of the proper and fair administration of justice or where, for reasons of public policy, the openness ordinarily required of our government will be more harmful than beneficial." *Id.*

In the case before us, the trial court ordered the three search warrants and their attendant papers sealed pursuant to N.C. Gen. Stat. § 132-1.4(k). The trial court also sealed these public records pursuant to N.C. Gen. Stat. § 132-1.4(e), which statesthat:

> [i]f a public law enforcement agency believes that release of information that is a public record under subdivisions (c)(1) through (c)(5) of this section will jeopardize the right of the State to prosecute a defendant or the right of a defendant to receive a fair trial or will undermine an ongoing or future investigation, it may seek an order from a court of competent jurisdiction to prevent disclosure of the information. In such action the law enforcement agency shall have the burden of showing by a preponderance of the evidence that disclosure of the information in question will jeopardize the right of the State to prosecute a defendant or the right of a defendant to receive a fair trial or will undermine an ongoing or future investigation.

The trial court incorrectly applied N.C. Gen. Stat. § 132-1.4(e) to the documents in the present case. The considerations provided for in N.C. Gen. Stat. § 132-1.4(e) refer only to the public records listed under N.C. Gen. Stat. § 132-1.4(c)(1) through (c)(5) and do not include search warrants returned by law enforcement agencies. However, we hold that the trial court did not abuse its discretion by sealing the search warrants and related affidavits. The trial court found that the release of information contained in the search warrants and attendant papers would undermine the ongoing homicide investigation and the potential success of it. In the sealing order, the trial court found that the sealing for a limited time period was necessary to ensure the interests of maintaining the State's right to prose-

cute a defendant, of protecting a defendant's right to a fair trial, and preserving the integrity of an ongoing or future investigation. Because the records were sealed pursuant to a court order, exempting them under N.C. Gen. Stat. § 132-1.4(k), Plaintiffs did not have a right of access to the documents. N.C. Gen. Stat. § 132-1.4(k) states that "[t]he following court records are public records and may be withheld only when . . . sealed by a court order: arrest and search warrants that have been returned by law enforcement agencies, indictments, criminal summons, and nontestimonial identification orders." We hold that the trial court did not abuse its discretion. This assignment of error is overruled.

[3] Plaintiffs also assert that the sealing orders violate North Carolina common law on the public's right of access to court records and proceedings. "The Supreme Court has recognized that the press and the public have a common law qualified right of access to judicial records." *Baltimore Sun*, 886 F.2d at 65 (citation omitted). "[U]nder the common law the decision to grant or deny access is 'left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.' " *Id.* at 64 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599, 55 L. Ed. 2d 570, 580 (1978)). However, in *Virmani*, the North Carolina Supreme Court has held that:

> when the General Assembly, as the policy-making agency of our government, legislates with respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the law of the State. . . . Therefore, [N.C.G.S. § 132- 1.4(k)] supplants any North Carolina common law right of public access to information regarding [arrest and search warrants].

*Virmani*, 350 N.C. at 473, 515 S.E.2d 691. For the reasons stated above, the trial court did not abuse its discretion in issuing its sealing orders under North Carolina common law.

[4] Plaintiffs argue that the trial court erred when it sealed the search warrants and related documents without properly applying the constitutional principles of the First Amendment of the United States Constitution.

The Court of Appeals for the Fourth Circuit has held that

> [t]he test for determining whether a first amendment right of access is available is: 1) "whether the place and process have his-

torically been open to the press and general public," and 2) "whether public access plays a significant positive role in the functioning of the particular process in question."

*Baltimore Sun*, 886 F.2d at 64 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-10, 92 L. Ed. 2d 1, 10 (1986)). If both of these prongs are met in the affirmative, "then a qualified First Amendment right of public access must be applied." *Virmani*, 350 N.C. at 479, 515 S.E.2d at 695. However, if either of those questions are answered in the negative, a first amendment right of access does not exist. "A first amendment right of access can be denied only by proof of a 'compelling governmental interest' and proof that the denial is 'narrowly tailored to serve that interest.' " *Baltimore Sun*, 886 F.2d at 64 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 73 L. Ed. 2d 248, 257 (1982)).

The Supreme Court has:

ma[de] clear that criminal proceedings may be closed to the public without violating First Amendment rights only if (1) closure serves a compelling interest; (2) there is a "substantial probability" that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that compelling interest. Moreover, the court may not base its decision on conclusory assertions alone, but must make specific factual findings.

*In Re Washington Post Co.*, 807 F.2d 383, 392 (4th Cir. 1986) (citation omitted).

Search warrants and related documents fail the first prong of the test in *Baltimore Sun* and therefore, Plaintiffs do not have a qualified First Amendment right of access. Historically, the issuance of search warrants has not been open to the press and general public. The Supreme Court has recognized that "the proceeding for issuing a search warrant 'is necessarily ex parte, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove the evidence.' " *Baltimore Sun*, 886 F.2d at 64 (quoting *Franks v. Delaware*, 438 U.S. 154, 169, 57 L. Ed. 2d 667, 681 (1978)).

"Frequently . . . the warrant papers including supporting affidavits are open for inspection by the press and public in the clerk's office after the warrant has been executed[,] [b]ut this is not demanded by the [F]irst [A]mendment." *Baltimore Sun*, 886 F.2d at 64. Although, "[t]he circuits are split on the press's first amendment right to access

to search warrant affidavits[, the Fourth Circuit has held, in *Baltimore Sun,*] that the press *does not* have a first amendment right of access to [judicial records, including] an affidavit for a search warrant" *Id.* at 64-65 (emphasis added); *see Media Gen. Operations, Inc. v. Buchanan,* 417 F.3d 424, 429 (4th Cir. 2005). Although we are not bound by federal decisions regarding constitutional rights, we find the Fourth Circuit's reasoning persuasive, holding that Plaintiffs do not have a First Amendment right of access to the sealed documents. We do not agree that the trial court incorrectly applied First Amendment principles to the sealing orders. This assignment of error is overruled.

**[5]** Plaintiffs also argue that the trial court erred by failing to apply the principles of Article I, §. 18 of the North Carolina Constitution ("open courts" provision). Plaintiffs contend that this "open courts" provision creates a qualified right of access to court proceedings and records.

Article I, § 18 of the North Carolina Constitution states, in pertinent part, that "[a]ll courts shall be open." N.C. Const. art. I, § 18 (2007). The United States Supreme Court has stated that "[a]lthough the right of access to criminal trials is of constitutional stature, it is not absolute." *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 73 L. Ed. 2d 248, 257 (1982). "[If] the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Id.* at 606-07, 73 L. Ed. 2d at 257 (citations omitted). Just as many cases have established that there is a qualified right of access to criminal trials, we hold that there is also a qualified right of access to records and documents in a criminal proceeding under the "open courts" provision.

The North Carolina Supreme Court, in *Virmani,* recognized that the legislature determined that the right of access to civil proceedings and records by the press and the public was "outweighed by the compelling countervailing governmental interest in protecting the confidentiality of the medical peer review process." *Virmani,* 350 N.C. at 477, 515 S.E.2d at 693. The court in *Virmani* also acknowledged that the North Carolina legislature, by statute, made medical peer review investigations confidential, excluding them as "public records" as part of public policy. *Id.* Similarly, we hold that the qualified right of access to criminal records is outweighed by the compelling, countervailing governmental interests expressed by the trial court.

## IN RE SEARCH WARRANTS OF COOPER

[200 N.C. App. 180 (2009)]

All three sealing orders in this case were issued pursuant to interests in protecting a defendant's right to receive a fair trial, the integrity of a future or ongoing investigation, and the State's right to prosecute a defendant. The trial court, in the 31 July 2008 order, included the following:

> "[T]he court shall balance the interests of the public in disclosure against the interests of the law enforcement agency and the alleged victim in withholding the information." The court must also insure that any person hereafter charged with this crime will not be denied his right to a fair trial resulting from a release of this information.
>
> . . . .
>
> Upon an initial review at the time the warrants were issued, balancing these interests, the court concluded by a preponderance of the evidence that the interest of the law enforcement agency and the District Attorney were those which were most compelling, as well as the right of anyone charged to hereafter receive a fair trial. Upon further review today, the court examining the issue again continues to be of that same opinion.

Therefore, the trial court properly applied the principles laid out in the "open courts" provision of the North Carolina Constitution. This assignment of error is overruled.

---

We hold that the trial court properly sealed all the search warrants at issue in this case. A motion to seal search warrants and related documents is usually made when the government applies for the warrant. *Baltimore Sun*, 886 F.2d at 65. As stated in the 2008 Administrative order, law enforcement officers may notify the District Attorney's office to obtain a motion and order to seal a search warrant at the time the affidavits and applications for search warrants are submitted to the trial court. However, as in the present case, a trial court judge may issue an *ex parte* sealing order at his discretion.

It is appropriate to seal such documents "when sealing is 'essential to preserve higher values and is narrowly tailored to serve that interest.' " *Id.* At the time the probable cause affidavits were submitted and search warrants were issued, no suspect had been arrested in connection with Nancy Cooper's homicide. Disclosure of the information contained in the affidavits and search warrants, as

the trial court included in the order, would have been "premature, since the homicide investigation [was] ongoing and no perpetrator ha[d] been charged."

If the trial court "decides to close a hearing or seal documents, 'it must state its reasons on the record, supported by specific findings.' " *In Re Washington Post*, 807 F.2d 383, 391 (4th Cir. 1986) (quoting *Knight Publishing Co.*, 743 F.2d at 234). The trial court "may explicitly adopt the facts that the government presents to justify sealing when the evidence appears creditable. But the decision to seal the papers must be made by the judicial officer[.]" *Baltimore Sun*, 886 F.2d at 65. The United States Supreme Court has "emphasized that the interest to be protected by closing trial proceedings [or sealing search warrants] must 'be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.' " *Id.* at 65 (quoting *Press-Enterprise*, 464 U.S. at 510, 78 L. Ed. 2d at 638. "[C]onclusory assertions are insufficient to allow review; specificity is required." *Id.* at 66.

The court in *Virmani* deemed that the sealing was necessary because the release of records "could cause harm to plaintiff and defendant and the peer review process if left unsealed in the public record during the course of pending litigation[,]" and deemed this finding sufficiently specific "to allow [the court] to determine whether the trial court's orders sealing documents and closing court were properly entered to serve a compelling public interest." *Virmani*, 350 N.C. at 477-78, 515 S.E.2d at 694. The findings in the present case were also sufficiently specific to determine whether the sealing orders served a compelling public interest. Among other findings and conclusions, the trial court found, by a preponderance of the evidence, that:

> release of this information today would likely risk and jeopardize the success of the investigation and will likely undermine the investigation and jeopardize the right of the State to prosecute the perpetrator. The court further finds that the release of the information may prevent a person hereafter accused from receiving a fair and impartial trial due to potential hearsay information about the offense that may prejudice the public against the accused.

Before issuing sealing orders, however, the "[trial court] must consider alternatives to sealing the documents." *Baltimore Sun*, 886 F.2d at 65. Examples of alternatives include "disclosing some of the

documents or giving access to a redacted version." *Id.* at 66. In the present case, it was impractical for the trial court to refrain from sealing all the search warrants and related documents or to give a redacted version of each. All the search warrants and attendant documents focused on gaining evidence as to Bradley Cooper, the marital relationship of Bradley Cooper and Nancy Cooper, the sensitive nature of the investigation and the potential for fluidity. The first warrant ordered the search of the shared residence of Bradley Cooper and Nancy Cooper, the person of Bradley Cooper, and the vehicles of Bradley Cooper and Nancy Cooper. The second search warrant ordered the search of the office of Bradley Cooper and the third search warrant permitted the search of Bradley Cooper's electronics, including computers and hard drives. Revealing a portion or a redacted version of any of these three search warrants would have frustrated the purpose of protecting the interests expressed by the trial court. Because the trial court also limited the sealing orders to thirty days each, we hold that the trial court considered the least restrictive means of keeping the information confidential.

We affirm the trial court's order, temporarily sealing the search warrants and related documents in the homicide investigation of Nancy Cooper.

For the foregoing reasons, the trial court's holding is affirmed.

Affirmed.

Judges McGEE and HUNTER, Robert C. concur.