**WIND v. CITY OF GASTONIA**

[226 N.C. App. 180 (2013)]

DAVID B. WIND, Plaintiff

v.

THE CITY OF GASTONIA, NORTH CAROLINA, A Municipal Corporation, Defendant

No. COA12-421

Filed 19 March 2013

1. **Appeal and Error—interlocutory orders and appeals—substantial right—privileged information**

    Because the trial court's interlocutory order compelled production of files which may be privileged pursuant to N.C.G.S. § 160A-168 the trial court's order affected a substantial right and was immediately appealable.

2. **Public Officers and Employees—police officer—right to inspection of documents—employee personnel file—official personnel decisions**

    The trial court did not err by concluding that defendant City violated N.C.G.S. § 160A-168 by denying plaintiff police officer's request to inspect the pertinent documents in his employee personnel file. Assuming *arguendo* that Internal Affairs Investigative Case Files 2008265 and 2008307 were materials to which the disclosure exemptions of subsection (c1)(4) applied, such materials were used by Chief Adams to make official personnel decisions with respect to plaintiff, and thus, plaintiff had a statutory right to inspect the requested files under subsection (c1)(4).

3. **Discovery—statutory obligation to allow inspection of confidential information—employee personnel file**

    Separately maintaining Internal Affairs investigative files, which defendant City conceded were a part of plaintiff's employee personnel file, did not exempt defendant from its statutory obligation under N.C.G.S. § 160A-168(c)(1) to allow plaintiff to inspect this "confidential" information.

4. **Appeal and Error—preservation of issues—failure to argue**

    Since defendant City did not argue that it could satisfy the mandatory disclosure requirement of N.C.G.S. § 160A-168(c)(1) by allowing plaintiff to inspect "confidential" information from his own employee personnel file that had been subjectively redacted by defendant, and since questions as to public policy are for legislative determination, such a discussion was inapposite to the issues.

Judge DILLON concurring in part and dissenting in part.

**WIND v. CITY OF GASTONIA**

[226 N.C. App. 180 (2013)]

Appeal by defendant from order entered 1 November 2011 by Judge Forrest Donald Bridges in Gaston County Superior Court. Heard in the Court of Appeals 7 January 2013.

*The McGuinness Law Firm, by J. Michael McGuinness, for plaintiff–appellee.*

*Cranfill Sumner & Hartzog LLP, by Jaye E. Bingham-Hinch, Patrick H. Flanagan, and Bradley P. Kline, for defendant–appellant.*

*North Carolina State Lodge of the Fraternal Order of Police, by Richard L. Hattendorf, amicus curiae.*

MARTIN, Chief Judge.

Defendant City of Gastonia appeals from the trial court's order granting plaintiff David B. Wind's motion for summary judgment, denying defendant's cross-motion for summary judgment, and ordering that defendant disclose to plaintiff unredacted copies of all documents contained in the City of Gastonia Police Department's Internal Affairs Investigative Case Files 2008265 and 2008307. We affirm and remand for further proceedings.

According to the record before us, plaintiff joined the Gastonia Police Department in March 2008 as a patrolman, after serving as a detention enforcement officer for the United States Immigration and Naturalization Service, and as an officer and detective with the Coral Springs Police Department in Florida. In the Fall of 2008, two complaints were made against plaintiff and reported to the Gastonia Police Department; one by a citizen, and one by a police officer. The citizen's complaint, which was designated as Internal Affairs ("IA") Investigative Case File 2008307, alleged that plaintiff exhibited "Rudeness/Force by Firearm" after plaintiff disarmed the citizen and secured the citizen's firearm while plaintiff conducted an investigation. The officer's complaint, which had been designated as IA Investigative Case File 2008265, alleged that plaintiff exhibited "Conduct Unbecoming of an Officer" and challenged plaintiff's "Integrity" and "Truthfulness" after the complainant charged that plaintiff falsified grounds for probable cause in order to make an arrest at a traffic stop. The citizen's complaint was investigated by plaintiff's supervisor, while the officer's complaint was investigated by Gastonia Police Department's Office of Professional Standards Unit, formerly its IA Unit.

Gastonia Police Department's Chief of Police Timothy Lee Adams was provided with all of the information collected upon the conclusion of both investigations in order to "adjudicate[] the case[s]" and make his final decisions with respect to each complaint. With respect to the citizen's complaint, the allegations "were determined to be NOT SUSTAINED" and the case was "closed." With respect to the officer's complaint, the allegations were determined to be "unfounded by the Chief [of Police]" and the case was designated as "closed, no further action required."

In February 2009, after the cases were deemed closed, plaintiff sent a written memorandum to Chief Adams requesting an opportunity to view the complete investigative files associated with the complaints, and met with Chief Adams in person shortly thereafter to request the same. Plaintiff asserts that Chief Adams refused his request to inspect the complete contents of the files. While the record indicates that Chief Adams did provide documents from these files to plaintiff—albeit two years after plaintiff's initial request—the documents provided to plaintiff were significantly redacted. Defense counsel represented to the trial court that the redactions concealed only the identity of the complainants and such information as would enable someone to identify them.

Plaintiff filed his Complaint and First Amended Complaint against defendant City of Gastonia ("Gastonia") in February 2010, alleging that Gastonia violated N.C.G.S. § 160A-168, the North Carolina Constitution, and Gastonia's own "rules, regulations, policies and procedures" by "refusing to disclose [to plaintiff] the requested documents" comprising IA Investigative Case Files 2008307 and 2008265. Plaintiff and Gastonia filed cross-motions for summary judgment, which were heard on 24 October 2011. On 1 November 2011, the trial court entered an order granting plaintiff's motion for summary judgment, denying Gastonia's motion for summary judgment, and retaining for trial "[t]he issue of any damages from the denial of the records . . . ." The court further ordered that plaintiff "is entitled to complete copies of the documents contained in [IA] Files 2008265 and 2008307 without any redacted information," and ordered that Gastonia "disclose these documents to [plaintiff]." Gastonia appealed to this Court, and the trial court entered a consent order staying "all further trial court level proceedings in this matter" until the conclusion of this appeal.

---

**[1]** "Generally, there is no right of immediate appeal from interlocutory

orders and judgments." *Sharpe v. Worland,* 351 N.C. 159, 161, 522 S.E.2d 577, 578 (1999), *on remand,* 137 N.C. App. 82, 527 S.E.2d 75 (2000); *see also id.* ("Interlocutory orders and judgments are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court to settle and determine the entire controversy." (internal quotation marks omitted)). However, "[n]otwithstanding this cardinal tenet of appellate practice, immediate appeal . . . is available from an interlocutory order or judgment which affects a substantial right." *Sharpe,* 351 N.C. at 161–62, 522 S.E.2d at 579 (citations and internal quotation marks omitted); *see also* N.C. Gen. Stat. § 1-277(a) (2011); N.C. Gen. Stat. § 7A-27(d)(1) (2011). "It is well settled that an interlocutory order affects a substantial right if the order deprive[s] the appealing party of a substantial right which will be lost if the order is not reviewed before a final judgment is entered." *Sharpe,* 351 N.C. at 162, 522 S.E.2d at 579 (alteration in original) (internal quotation marks omitted).

Here, Gastonia concedes that the present appeal is interlocutory. However, Gastonia argues that such appeal is properly before this Court for immediate review because the trial court's order affects a substantial right "that would be forever lost by [Gastonia] if the matter proceeded[] by having to turn over documents which [Gastonia] claims are statutorily privileged." We recognize that "if [Gastonia] is required to disclose the very documents that it alleges are protected from disclosure by the statutory privilege, then a right materially affecting those interests which a [person] is entitled to have preserved and protected by law—
—a substantial right——is affected," and "the substantial right asserted by [Gastonia] will be lost if the trial court's order is not reviewed before entry of a final judgment." *See id.* at 164–65, 522 S.E.2d at 580–81 (second alteration in original) (internal quotation marks omitted). Thus, because the trial court's interlocutory order compels production of files which may be privileged pursuant to N.C.G.S. § 160A-168, we conclude that the trial court's order affects a substantial right and is immediately appealable to this Court. *See Hayes v. Premier Living, Inc.,* 181 N.C. App. 747, 751, 641 S.E.2d 316, 318 (2007). We further conclude, since the sole argument advanced by the parties regarding the grounds for immediate appellate review is Gastonia's argument that protecting the requested files from disclosure affects a substantial right pursuant to a statutory privilege arising under N.C.G.S. § 160A-168, only the issues of whether N.C.G.S. § 160A-168 requires Gastonia to disclose the requested files to plaintiff, and whether Gastonia is statutorily exempt from the requirement, if any, to disclose the same, are properly before us.

**[2]** Gastonia first argues that it did not violate N.C.G.S. § 160A-168 by denying plaintiff's request to inspect the documents at issue, because the documents requested fall within a subsection of the statute, N.C.G.S. § 160A-168(c1)(4), which, according to Gastonia's argument, exempts it from any disclosure obligations arising under the other subsections of the statute. "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990); *see also Perkins v. Ark. Trucking Servs., Inc.,* 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000) ("Nothing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning." (internal quotation marks omitted)). "[H]owever, where a statute is ambiguous or unclear as to its meaning, we must interpret the statute to give effect to the legislative intent." *N.C. Dep't of Revenue v. Hudson,* 196 N.C. App. 765, 767, 675 S.E.2d 709, 711 (2009). Additionally, "[w]ords and phrases of a statute may not be interpreted out of context, but individual expressions must be construed as a part of the composite whole and must be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit." *In re Hardy,* 294 N.C. 90, 95–96, 240 S.E.2d 367, 371–72 (1978) (internal quotation marks omitted).

According to N.C.G.S. § 160A-168(a), employee personnel files "maintained by a city are subject to inspection and may be disclosed only as provided by [N.C.G.S. § 160A-168]." N.C. Gen. Stat. § 160A-168(a) (2011). "[A]n employee's personnel file" "consists of any information in any form gathered by the city with respect to that employee and, by way of illustration but not limitation, relating to his application, selection or nonselection, performance, promotions, demotions, transfers, suspension and other disciplinary actions, evaluation forms, leave, salary, and termination of employment." *Id.* In the present case, Gastonia conceded during oral arguments to this Court that the documents at issue are a part of plaintiff's employee personnel file in accordance with N.C.G.S. § 160A-168(a).

All information contained in a city employee's personnel file that is not deemed to be "a matter of public record," which includes information such as name, age, current position and salary, and date of original employment, *see* N.C. Gen. Stat. § 160A-168(b), "is confidential and shall be open to inspection only" in certain instances. N.C. Gen. Stat. § 160A-168(c)(1). One instance in which "confidential" information from a city employee's personnel file "shall be open to inspection" allows

"[t]he employee or his duly authorized agent" to "examine all portions of his personnel file," *id.*, with limited exceptions,[1] which gives the employee an opportunity to determine whether material in his file "is inaccurate or misleading." *See, e.g.*, N.C. Gen. Stat. § 160A-168(d) (providing that the city council of a city that maintains personnel files "containing information other than" that which is a matter of public record "shall establish procedures whereby an employee who objects to material in his file on grounds that it is inaccurate or misleading may seek to have the material removed from the file or may place in the file a statement relating to the material"). In the present case, Gastonia does not dispute that, with limited exceptions, a city employee has a statutory right to inspect "confidential" information in his own personnel file pursuant to N.C.G.S. § 160A-168(c)(1).

However, the statute further provides that, "[e]ven if considered part of an employee's personnel file, the following information need not be disclosed to an employee nor to any other person": "Notes, preliminary drafts and internal communications concerning an employee. In the event such materials are used for any official personnel decision, then the employee or his duly authorized agent shall have a right to inspect such materials." N.C. Gen. Stat. § 160A-168(c1)(4). It is under this exception enumerated in subsection (c1)(4)[2] that Gastonia asserts its authority to deny plaintiff's request to inspect the documents at issue. Thus, we now consider whether Gastonia was permitted by the exemption under N.C.G.S. § 160A-168(c1)(4) to deny plaintiff the opportunity to inspect the IA investigative files at issue——files which Gastonia concedes are a part of plaintiff's employee personnel file in accordance with N.C.G.S. § 160A-168(a)—despite plaintiff's statutory right under N.C.G.S. § 160A-168(c)(1) to otherwise inspect this "confidential" information.

---

1. Subsection (c)(1) provides that all information contained in a city employee's personnel file other than that which is deemed a matter of public record under subsection (b) "shall be open to inspection" to an "employee or his duly authorized agent . . . except (i) letters of reference solicited prior to employment, and (ii) information concerning a medical disability, mental or physical, that a prudent physician would not divulge to his patient." N.C. Gen. Stat. § 160A-168(c)(1). Because neither plaintiff nor Gastonia assert that these exceptions are applicable to the files requested in the present case, we do not address these exceptions further.

2. Subsections (c)(1) and (c1) of N.C.G.S. § 160A-168 are similarly-enumerated provisions of the same statute; subsection (c1) was added to N.C.G.S. § 160A-168 by the General Assembly in 1981, after subsections (a) through (f) were already codified. *See* 1981 N.C. Sess. Laws 1424, 1425, ch. 926, § 3; 1975 N.C. Sess. Laws 929, 930–32, ch. 701, § 2. Because this opinion makes repeated references to both subsections, we caution the reader to be mindful of the potential confusion these similar designations may cause.

We note as a preliminary matter that, because the disclosure exemption arising under subsection (c1)(4) particularly applies only to those materials "concerning an employee" that are described as "[n]otes, preliminary drafts and internal communications," *see* N.C. Gen. Stat. § 160A-168(c1)(4), Gastonia can only invoke the disclosure exemption of this subsection if the IA investigative files at issue are materials that qualify for this exemption. In other words, because Gastonia asks this Court to conclude that it was statutorily authorized to exempt the complete IA investigative files at issue under subsection (c1)(4), each file would have to be deemed a note, a preliminary draft, or an internal communication concerning plaintiff, as such terms are used in subsection (c1)(4), in order for Gastonia's claim of an exemption from the disclosure requirements of subsection (c)(1) to succeed.

We look for guidance about what materials the General Assembly intended to include within the ambit of "[n]otes, preliminary drafts and internal communications" by examining the plain meaning of these terms. Based on the common definitions of these terms at the time this statute was promulgated, it appears the General Assembly intended to allow a disclosure exemption under subsection (c1)(4) for written materials that are informal or provisional in character. *See Webster's New World Dictionary* 423 (2d ed. 1974) (defining "draft" as "a rough or preliminary sketch of a piece of writing"); *id.* at 973 (defining "note" as "a brief statement of a fact, experience, etc. written down for review, as an aid to memory, or to inform someone else"). In the present case, the documents comprising the IA investigative files at issue are not in the record before this Court, nor would we expect them to be in light of the substantial right asserted as the grounds for Gastonia's interlocutory appeal. Nonetheless, the materials sought for inspection by plaintiff in this case are the complete investigative files concerning complaints made against plaintiff, which investigations have been finally adjudicated and determined to be closed. Since it is Gastonia's burden as the appellant to provide argument supporting its assertion that the materials it seeks to exempt from the disclosure requirement of subsection (c)(1) fall within the ambit of material that may be exempt from disclosure under subsection (c1)(4), *see* N.C.R. App. P. 28(b)(6), in the absence of contrary argument or evidence in the record, we cannot conclude that the IA investigative files that plaintiff seeks to inspect are each a note, a preliminary draft, or an internal communication concerning plaintiff. Nevertheless, even assuming without deciding that the IA investigative files that plaintiff seeks to inspect are materials that may be exempted from disclosure to plaintiff under subsection (c1)(4), we are not persuaded by Gastonia's argument that it had a statutory right to refuse

plaintiff's request to inspect these materials because such materials were not "used for any official personnel decision."

While the General Assembly uses the phrase "official personnel decision" in four other provisions of the General Statutes, *see* N.C. Gen. Stat. § 122C-158(d)(4) (2011) (regarding privacy of personnel records for employees of facilities delivering services for mental health, developmental disabilities, and substance abuse); N.C. Gen. Stat. § 131E-257.2(d)(4) (2011) (regarding privacy of personnel records for public hospital employees); N.C. Gen. Stat. § 153A-98(c1)(4) (2011) (regarding privacy of personnel records for county employees); N.C. Gen. Stat. § 162A-6.1(d)(4) (2011) (regarding privacy of personnel records for water and sewer authorities' employees), the General Assembly has not explicitly defined this phrase.

As we recognized above, "[s]tatutory interpretation properly begins with an examination of the plain words of the statute," because "[t]he legislative purpose of a statute is first ascertained by examining the statute's plain language." *Correll v. Div. of Soc. Servs.*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992); *see also Perkins*, 351 N.C. at 638, 528 S.E.2d at 904 ("[C]ourts may look to dictionaries to determine the ordinary meaning of words within a statute."). "If a statute 'contains a definition of a word used therein, that definition controls,' but nothing else appearing, 'words must be given their common and ordinary meaning.' " *Knight Publ'g Co. v. Charlotte-Mecklenburg Hosp. Auth.*, 172 N.C. App. 486, 492, 616 S.E.2d 602, 607 (quoting *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202–03 (1974)), *disc. review denied*, 360 N.C. 176, 626 S.E.2d 299 (2005).

Generally, "official" is defined as "by, from, or with the proper authority; authorized or authoritative"; "personnel" is defined as "persons employed in any work, enterprise, service, establishment, etc."; and "decision" is defined as "a judgment or conclusion reached or given." *Webster's New World Dictionary* 366, 988, 1062 (2d ed. 1974). Thus, according to the plain meaning of the terms comprising this phrase, an "official personnel decision" is an authorized or authoritative judgment or conclusion of or pertaining to employed persons. Since "personnel" is a collective noun, the plain meaning of this phrase—as it is used in this statute—more specifically refers to authorized or authoritative judgments or conclusions of or pertaining to the employed person about whom the judgment or conclusion is rendered. Gastonia urges this Court to narrowly construe this phrase to apply only to those "decisions" that result in "*some type of change or alternation* [sic] in employment."

(Emphasis added.) However, Gastonia provides no meaningful support for its narrowly-drawn interpretation. Instead, we think the General Assembly's use of the term "personnel" in subsection (a) of this statute is consistent with a less-constrained reading of the phrase "official personnel decision," as the phrase is used in subsection (c1)(4), and is also instructive in construing the meaning of the challenged phrase within the context of this statute.

The General Assembly broadly defines the phrase "employee's personnel file" as "consist[ing] of *any information in any form* gathered by the city *with respect to* that employee." N.C. Gen. Stat. § 160A-168(a) (emphasis added). In other words, according to the General Assembly, the information included in a city employee's personnel file is not limited to information that, as Gastonia might suggest based on its asserted plain meaning of the term "personnel," concerns only changes in employment like promotions, demotions, or transfers. Rather, according to the express language of the statute, the information in a city employee's personnel file also concerns "nonselection," "performance," "evaluation forms," as well as other information "in any form gathered by the city with respect to that employee." *See id.* In fact, the General Assembly expressly declines to limit what form the information included in an employee's personnel file may take, by providing a list of examples of information that it specifies is offered "by way of illustration *but not limitation." See id.* (emphasis added). Thus, with respect to the phrase "official personnel decision," as it is used in the context of the subsection (c1)(4) exemption, we are of the opinion that the General Assembly similarly intended that an "official personnel decision" need not be limited only to those determinations that result in a change to an employee's position of employment, as Gastonia suggests. Therefore, we conclude that when an informal, provisional, or otherwise "preliminary" or "internal" communication, note, or draft concerning an employee is included in his or her personnel file, that communication, note, or draft is subject to the disclosure requirement of subsections (c)(1) and (c1)(4) when such materials are used to make an authorized or authoritative judgment or conclusion with respect to that employee.

According to the depositions of both Chief Adams and Sergeant Reid E. Brafford, who is the supervisor of the Office of Professional Standards and reports directly to Chief Adams, once the investigations were concluded, the complete investigative files for each complaint, which included all of the documents necessary to develop a thorough investigative file into both complaints, were provided to Chief Adams, the senior-most official of the department. In accordance with departmental

WIND v. CITY OF GASTONIA

[226 N.C. App. 180 (2013)]

policy, Chief Adams is the person authorized to serve as the final deci-sion-maker with respect to complaints of misconduct against employees and to adjudicate such matters on behalf of the department. Chief Adams analyzed the facts and issues arising out of the complaints as detailed in each document comprising the investigative files and weighed all of the evidence based on the information included in the respective inves-tigative files in order to finally determine each matter. After considering all of the information included in each document in the investigative files, Chief Adams finally decided to dismiss or terminate the complaints made against plaintiff and determined, as a result of the respective in-vestigations, that no disciplinary action need be taken against plaintiff in either matter. In other words, Chief Adams was authorized to, and did, use IA Investigative Case Files 2008265 and 2008307 to finally adjudicate matters pertaining to plaintiff.

Gastonia insists, however, that because plaintiff "experienced no change" in his employment as a result of Chief Adams's final adjudica-tions regarding the complaints against plaintiff, Chief Adams "made no 'official personnel decision' with regards to the two disputed IA inves-tigative files," and, thus, plaintiff failed to establish that he is entitled to inspect the investigative files under subsection (c1)(4). Nonetheless, as we recognized above, the General Assembly provided in subsection (a) that an employee's "personnel" file may include information regarding "selection *or nonselection*," "performance," "evaluation forms," as well as other information "in any form" "with respect to that employee." N.C. Gen. Stat. § 160A-168(a) (emphasis added). Similarly, even though Chief Adams's decisions did not result in a change in plaintiff's employment, we are persuaded that Chief Adams made official personnel decisions, as we have construed this phrase, to finally dismiss or terminate the com-plaints against plaintiff and to take no disciplinary action against him using the information included in the IA investigative files. Therefore, assuming *arguendo* that IA Investigative Case Files 2008265 and 2008307 were materials to which the disclosure exemptions of subsection (c1) (4) applied, because we are persuaded that such materials were used by Chief Adams to make official personnel decisions with respect to plaintiff, we conclude that plaintiff has a statutory right to inspect the requested files under subsection (c1)(4).

[3] Gastonia next argues that it did not violate N.C.G.S. § 160A-168 by denying plaintiff's request to inspect the documents at issue, because the requested documents "are separate files employed for the maintenance of confidentially [sic] and protection of [Gastonia's] IA investigation program." Gastonia appears to suggest that physically separating the IA

investigative files at issue from other materials in plaintiff's employee personnel file renders the disclosure requirements of this statute inapplicable to the requested files. Nevertheless, perhaps because Gastonia realized the untenability of its argument, seeking an exemption from a statutory requirement to disclose certain documents while simultaneously arguing that the statute under which the disclosure requirement arises is inapplicable to the type of documents for which it seeks the statutory exemption, Gastonia conceded during oral arguments that the requested files *are* a part of plaintiff's employee personnel file under N.C.G.S. § 160A-168(a). Additionally, Gastonia does not direct this Court to any relevant authority which exempts the requested files from the disclosure mandate of N.C.G.S. § 160A-168(c)(1), requiring that, with limited exception, all "confidential" information in a city employee's personnel file "shall be open to inspection" by that employee. Thus, we find no support for Gastonia's assertion that "separately" "maintain[ing]" these IA investigative files, which it concedes are a part of plaintiff's employee personnel file, exempts Gastonia from its statutory obligation under N.C.G.S. § 160A-168(c)(1) to allow plaintiff to inspect this "confidential" information.

[4] Finally, we note that the dissent raises a public policy argument that advocates for Gastonia's right to provide plaintiff with redacted information from plaintiff's own employee personnel file. Since Gastonia does not present argument to this Court that it could satisfy the mandatory disclosure requirement of N.C.G.S. § 160A-168(c)(1) by allowing plaintiff to inspect "confidential" information from his own employee personnel file that had been subjectively redacted by Gastonia, and since "questions as to public policy are for legislative determination," *see Home Sec. Life Ins. Co. v. McDonald*, 277 N.C. 275, 285, 177 S.E.2d 291, 298 (1970), we find such a discussion to be inapposite to the issues properly before us.

Accordingly, we conclude the trial court did not err when it granted summary judgment in favor of plaintiff, denied Gastonia's cross-motion for summary judgment, and ordered Gastonia to disclose to plaintiff unredacted copies of all documents contained in Gastonia Police Department's IA Investigative Case Files 2008265 and 2008307.

Affirmed; Remanded for further proceedings.

Judge HUNTER concurs.

Judge DILLON concurs in part and dissents in part.

DILLON, Judge, concurring in part and dissenting in part.

I concur with the majority's holding that, although interlocutory, the trial court's summary judgment order is immediately appealable as the order affects a substantial right. I also concur with the majority's holding that the information sought by Plaintiff falls within the scope of N.C. Gen. Stat. § 160A-168(a) (2011), as part of Plaintiff's employee personnel file. However, I respectfully dissent from the portion of the majority opinion defining "official personnel decision" and affirming the trial court's order, because I believe, based on the facts of this case and the issues properly before us, that the information sought by Plaintiff falls under the exemption contained in N.C. Gen. Stat. 160A-168(c1)(4) (2011).

In the case *sub judice*, Plaintiff, a police officer employed by Defendant, was the subject of two separate internal affairs investigations which arose out of complaints filed against him, one by a citizen and one by a fellow police officer. After investigations were conducted, both complaints were dismissed by Plaintiff's superior, Chief of Police Tim Adams (Chief Adams), with no action taken against Plaintiff. Plaintiff, however, sought from Defendant access to the contents of the internal investigation files. Based on the record, it appears that Defendant has provided all of the requested information to Plaintiff, but with the identities of the people who lodged the initial complaints redacted. Plaintiff filed this appeal to compel Defendant to disclose the *identity* of the citizen and the police officer who filed the complaints.[1]

I: Exemption, N.C. Gen. Stat. § 160A-168(c1)(4)

Defendant argues that even if the information is part of Plaintiff's "employee personnel file" pursuant to N.C. Gen. Stat. § 160A-168(a), Defendant may, nonetheless, withhold the information from Plaintiff pursuant to the exemption in N.C. Gen. Stat. § 160A-168(c1)(4), which provides the following:

> (c1) Even if considered part of an employee's personnel file, the following information need not be disclosed to an employee nor to any other person:

---

1. At the hearing on the motions for summary judgment, the trial court asked whether "the city's position is the plaintiff doesn't get anything from the IA file[,]" to which Defendant's attorney stated, "[j]ust the identity of the individuals who made the [complaints]." When the court further inquired, "so everything else has been disclosed," Defendant's attorney responded, "Yes[.]" This is a fact that Plaintiff does not dispute.

. . . .

(4)  Notes, preliminary drafts and internal com-
munications concerning an employee. In the event
such materials are used for any official personnel
decision, then the employee or his duly authorized
agent shall have a right to inspect such materials.

*Id.* Therefore, to qualify for the exemption from disclosure under (c1)
(4), the information sought (1) must be comprised of "[n]otes, prelimi-
nary drafts [or] internal communications[,]" *and* (2) must not have been
"used for any official personnel decision[.]" *Id.* The majority ultimately
bases its holding on the second requirement, concluding that the request-
ed information *was* used for "official personnel decision[s]" as follows:
"Nevertheless, even assuming without deciding that the IA investigative
files that plaintiff seeks to inspect are [notes, preliminary drafts and in-
ternal communications], we are not persuaded by Gastonia's argument
that it had a statutory right to refuse plaintiff's request to inspect these
materials because such materials were not 'used for any official person-
nel decision.' " I disagree with the majority and believe that the decisions
by Chief Adams not to sustain the complaints did not rise to the level of
"official personnel decision[s]" under (c1)(4). I believe the proper hold-
ing in this case is to reverse the trial court's entry of summary judgment
in favor of Plaintiff and to remand the case to the trial court for entry of
an order granting Defendant's motion for summary judgment.

Based on the record and the arguments of the parties, the only issue
regarding the application of (c1)(4) concerns the question of whether an
"official personnel decision" was made, and not whether the materials
were "[n]otes, preliminary drafts and internal communications[.]" N.C.
Gen. Stat. § 160A-168(c1)(4). At the summary judgment hearing below,
Plaintiff conceded that the only issue in this case regarding the appli-
cability of (c1)(4) concerns whether the materials were "used for [an]
official personnel decision":

THE COURT: But it sounds like what my decision really
boils down to in this case is a matter of statutory inter-
pretation of [N.C. Gen. Stat. §] 160A-168 subsection (c1)
(4). "In the event such materials are used for any official
personnel decision, then the employer's duly authorized
agent shall have the right to inspect such material [sic]."
So what I am being called on to decide is, does that mean
what it says, any official personnel decision including the
determination of what if any consequences are suffered as

**WIND v. CITY OF GASTONIA**

[226 N.C. App. 180 (2013)]

a result of that internal affairs investigation. Or does that really mean any other official personnel decision, other than [a] determination of the subject of the internal affairs inquiry. Is that really what it boils down to?

[PLAINTIFF'S COUNSEL]: Your Honor, I think . . . the foremost determination that you have to make . . . [is whether Defendant has] to comply with that statute because their chief of police, and I give him credit for this, their chief of police testified under oath that he made a personnel decision.

Likewise, Plaintiff does not make an argument in his brief with this Court that the information requested is *not* "[n]otes, preliminary drafts [or] internal communications[.]" N.C. Gen. Stat. § 160A-168(c1)(4). Rather, Plaintiff argues that subsection "(c1)(4) essentially presents one question: were the documents [at] issue used for any official personnel decision? Chief Adams used the information from the documents in making his final official personnel decision."

The majority states that "we cannot conclude that the IA investigative files that plaintiff seeks to inspect are each a note, a preliminary draft, or an internal communication," recognizing that not all of the materials sought by Plaintiff are even part of the record. However, though not part of its holding, the majority does state that it appears the General Assembly intended the phrase "notes, preliminary drafts and internal communications" as used in (c1)(4) to apply to "materials that are informal or provisional in character[,]" relying on WEBSTER'S DICTIONARY definitions for "note" and "draft." Specifically, the majority refers to WEBSTER'S definition of "note" as being "a brief statement of a fact, experience, etc. written down for review, as an aid to memory, or to inform someone else[.]" Based on evidence of record, I believe that at least some portions of the IA investigative file — collections of statements of facts or experiences, "written down for review" by Chief Adams or "to inform" Chief Adams — falls within the majority's stated definition of "notes." Additionally, the record does contain a redacted memorandum to Chief Adams drafted by the officer who investigated one of the complaints against Plaintiff, which I believe clearly constitutes an "internal communication concerning an employee" within the plain meaning of (c1)(4).

I also find the Supreme Court's decision in *News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 412 S.E.2d 7 (1992), informative as to the meaning of "preliminary draft." In that case, the UNC system president appointed a commission to investigate alleged improprieties

relating to a university's men's basketball team. *Id.* at 470, 412 S.E.2d at 10. At the conclusion of the investigation, members of the commission submitted reports to the UNC system president. *Id.* at 483, 412 S.E.2d at 18. The plaintiff newspaper sought, in part, the disclosure of those investigative reports pursuant to the Public Records Law. *Id.; see also* N.C. Gen. Stat. § 132-6. In that case, the reports prepared by the commission were described as "preliminary draft reports." *Poole*, 330 N.C. at 484, 412 S.E.2d at 34. The Court's language suggests and could be construed to stand for the proposition that the product of an investigation (*e.g.*, reports) submitted for review by a person in authority may constitute "preliminary drafts."

I now turn to the phrase "official personnel decision[.]"[2] Neither party nor the majority cites any case law in which this phrase has been construed or applied. Rather, by combining the respective definitions for "official," "personnel," and "decision" as contained in WEBSTER'S DICTIONARY, the majority interprets the statutory phrase as follows: "[T]he plain meaning of this phrase — as used in this statute — more specifically refers to *authorized or authoritative judgments or conclusions of or pertaining to the employed person about whom the judgment or conclusion is rendered.*" (emphasis added). I believe the majority's definition is overly broad because it could be applied essentially to *any* "personnel decision," rendering the word "official" in the statutory language meaningless. *See Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 216, 388 S.E.2d 134, 140 (1990) (stating that "[a] statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage"). The majority fails to recognize that every legitimate personnel decision which occurs in a workplace, by its nature, is a judgment or conclusion made by someone authorized to make the decision. I believe that the General Assembly did not intend that the word "official" be surplusage, but rather intended for the word "official" to modify "personnel decision" to limit the phrase's application.

In further support of a broad interpretation of "official personnel decision," the majority states that "we think the General Assembly's use of the term 'personnel' in subsection (a) of this statute is consistent with

---

2. The second part of the exemption in subsection (c1)(4) requires that the materials not be "used" in any "official personnel decision." Defendant does not argue that a genuine issue of material fact exists as to whether Chief Adams "used" the information sought by Plaintiff, i.e., the names of the complainants, to make his determination not to sustain the complaints. As such, the analysis is properly limited to the definition of the phrase "official personnel decision."

a less-constrained reading of the phrase 'official personnel decision,' as the phrase is used in subsection (c1)(4), and is also instructive in construing the meaning of the challenged phrase within the context of this statute." In other words, the majority argues that the General Assembly must have intended for "official personnel decision" to be construed broadly since the phrase "employee's personnel file" in subsection (a) is defined broadly and both phrases relate to "personnel." I agree with the majority that, in construing the phrase "official personnel decision," the entire statute should be read in context and the definition of "employee's personnel file" as used in subsection (a) should be considered. However, the majority's comparison of the two phrases is flawed because it ignores the fact that the General Assembly chose to incorporate the modifier "official" to limit the scope of "personnel" in (c1)(4), but did not do so in subsection (a).

While our courts have never construed or applied the phrase "official personnel decision," our courts have used the phrase "personnel decision" on a number of occasions to describe a broad range of workplace decisions made by someone in a position of authority, all of which would fit the majority's definition of "official personnel decision." *See, e.g., In re Officials of Kill Devil Hills Police Dep't.*, ___ N.C. App. ___, ___, 733 S.E.2d 582, 587 (2012) (overruling the trial court's attempt to discipline a Chief of Police and other police officers and referring to such decisions as rightfully the department's "personnel decisions"); *Bulloch v. N.C. Dept. of Crime Control & Pub. Safety*, ___ N.C. App. ___, ___, 732 S.E.2d 373, 379, *disc. review denied*, ___ N.C. ___, 735 S.E.2d 178 (2012) (referring to a Line Sergeant's dismissal from employment with the North Carolina Highway Patrol, on grounds of unacceptable personal conduct, as a "personnel decision"); *Bradley v. Bradley*, 206 N.C. App. 249, 257, 697 S.E.2d 422, 427 (2010) (using the term "personnel decision" to describe a decision by one in a position of authority that would "in any way change, modif[y], or affect" another's "rights, positions, or ownership interest" in a company); *Zimmerman v. Appalachian State Univ.*, 149 N.C. App. 121, 133, 560 S.E.2d 374, 382 (2002) (referring to the decision by administrators of Appalachian State University not to offer a reappointment contract to a non-tenured faculty member as a "personnel decision").

It is interesting that Defendant presents an argument in its brief, in essence, that the information sought by Plaintiff does not even fall within the definition of "employee's personnel file" in subsection (a) because the information is stored by Defendant separately from Plaintiff's official personnel file. N.C. Gen. Stat. § 160A-168(a). I agree, though, with the

majority that the General Assembly expressly intended the phrase "employee's personnel file" in subsection (a) to be construed more broadly than Defendant argues, and not to apply *only* to materials stored within an employee's *official* personnel file. Otherwise, the General Assembly could have employed the phrase "employee's *official* personnel file" in subsection (a).[3]

Our courts have recognized that even though "[g]ood public policy is said to require liberality in the right to examine public records . . . some degree of confidentiality is necessary for government to operate effectively[.] . . ." *Advanced Publications, Inc. v. Elizabeth City*, 53 N.C. App. 504, 506, 281 S.E.2d 69, 70-71 (1981); *see also News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 475, 412 S.E.2d 7, 13 (1992). I believe the General Assembly enacted the exemptions in subsection (c1) to recognize the interest of government to keep certain information confidential and enable supervisors to better manage the employees in their respective governmental departments. The Fourth Circuit Court of Appeals has recognized this legitimate concern in the context of internal affairs investigations within police departments:

> [Internal] investigations face an uphill battle due to the so-called "blue wall," the tendency of law enforcement officers to place solidarity above all else and to be less than fully cooperative with investigations of fellow officers. "Officers who report misconduct are ostracized and harassed; becoming targets of complaints and even physical threats; and are made to fear that they will be left alone on the streets in a time of crisis." In such a setting, the confidentiality of internal investigations may be not only desirable but essential.

*In re Grand Jury, John Doe No. G.J.2005-2*, 478 F.3d 581, 586 (4th Cir. 2007) (internal citation omitted).

Defendant has addressed this concern in its Policies and Procedures, a portion of which is part of the record and includes the following:

> In order to safeguard the anonymity of complain[ants] who wish to remain anonymous, and because charges are

---

3. In construing N.C. Gen. Stat. § 153A-98(a), which defines "personnel file" for a county employee with identical language to that used in N.C. Gen. Stat. § 160A-168(a) to define a personnel file for a municipal employee, this Court held that whether a document is part of a " 'personnel file' . . . depends upon the nature of the document and not upon where the document has been filed." *News Reporter Co. v. Columbus County*, 184 N.C. App. 512, 516, 646 S.E.2d 390, 393 (2007).

WIND v. CITY OF GASTONIA

[226 N.C. App. 180 (2013)]

> based only on the results of an investigation, an officer
> who is charged with an offense will have access only to
> that material which will be introduced against him or her
> in a departmental hearing.

Additionally, according to Defendant's policies a police officer does not even have the right to know the facts surrounding a complaint against him until the investigation is completed, and only then if the Chief of Police recommends disciplinary action. By way of analogy, consider the Rules of our State's Judicial Standards Commission regarding the investigation of North Carolina judges. Specifically, Rule 6 states that unless an investigation results in the issuance of a public reprimand or the institution of a disciplinary proceeding, a judge does not have the absolute right to know the identity of the person filing the complaint or even that a complaint has been lodged. *See* North Carolina Rules of the Judicial Standards Commission, Rule 6 (stating that "the investigative officer *may* notify respondent that a complaint has been received and *may* disclose to respondent the name of the person making the complaint") (emphasis added); *see also Brock & Scott Holdings, Inc. v. Stone*, 203 N.C. App. 135, 137, 691 S.E.2d 37, 38 (2010) (stating that the "use of [the word] 'may' generally connotes permissive or discretionary action and does not mandate or compel a particular act").

While I believe that the General Assembly enacted the exemptions in subsection (c1)(4) to allow governmental departments to maintain a level of confidentiality in its dealings with internal employment matters, I believe the General Assembly incorporated the phrase "official personnel decision" in subsection (c1)(4) to balance this government's interest with an employee's interest to confront and address information that is used in official decisions affecting his employment. N.C. Gen. Stat. § 160A-168(c1)(4).

In this case, the majority concludes the decisions by Chief Adams *not* to recommend that disciplinary action be taken against Plaintiff constitute "official personnel decisions." Though Chief Adams' decisions could arguably constitute "personnel decisions," I do not believe that these decisions constitute "official personnel decisions" under (c1)(4). Rather, Chief Adams' decisions involved the classification of complaints rather than a recommendation or order affecting the Plaintiff's position of employment. I do not believe Chief Adams' actions would have risen to the level of "official personnel decision[s]" unless he had sustained the complaints and had recommended discipline against Plaintiff. Under the majority's definition, even the decision by the investigating

officer to commence investigations after receiving the complaints would require the Plaintiff be notified about the impending investigation, thus possibly compromising the ability of the investigating officer to compile evidence.

Based on the foregoing, I would conclude that the decision by Chief Adams to classify the two complaints against Plaintiff as "not sustained" did not rise to the level of an "official personnel decision" under (c1)(4).

## II: Redaction and Public Policy

This Court has held that, as a matter of public policy, information which falls under the Public Records Act may be provided with the identities of certain individuals redacted to insure the "safety and security" of the individuals, notwithstanding the lack of a statute authorizing the redaction. *S.E.T.A. UNC-CH v. Huffines*, 101 N.C. App. 292, 295, 399 S.E.2d 340, 342 (1991). In *S.E.T.A.*, the plaintiff sought certain records concerning animal experiments being conducted at UNC-Chapel Hill. *Id.* at 293, 399 S.E.2d at 341. The University argued, in part, that the names of the individuals conducting the research should not be disclosed because of concerns regarding the safety of the researchers and because of the potential "chilling effect" disclosing their identities might have on the University finding other individuals willing to conduct animal research. *Id.* at 295, 399 S.E.2d at 343. This Court ordered that the portions of the research records, not otherwise subject to a statutory exemption, be made available for inspection under the Public Records Act, but that the University could redact the names of the researchers based on public policy concerns. *Id.* at 298, 399 S.E.2d at 344.

In this case, Plaintiff has admitted in his complaint and argues in his brief that one of his motivations to discover the identity of the complainants is so that he can sue them. In the hearing on the motions for summary judgment, Plaintiff's attorney spoke openly about possible causes of action, stating, "we might have had us a decent defamation claim[.]" I believe that, because of the threat of a lawsuit and also for the safety concerns quoted in *In re Grand Jury* above, divulging the names of complainants would have a chilling effect on police officers and others reporting misconduct and would affect Chief Adams' ability to manage his department effectively.

Based on this Court's reasoning in *S.E.T.A.*, *supra*, as a matter of public policy, a municipal employer should be allowed to redact certain information when providing an employee with information that may be, technically, within an employee's personnel file. Such redactions may

include the identities of those who alert their managers of misconduct by co-workers where the testimony of the original complainant is not used or needed to sustain the complaint or where the complaint is, otherwise, not sustained. Therefore, even if the materials sought by Plaintiff falls outside the exemption in subsection (c1)(4), I believe Defendant acted appropriately by providing the information with the names of the complainants redacted based on the public policy concern that has been recognized by this Court.

## IV. Conclusion

For the reasons stated above, I would reverse the decision of the trial court to grant Plaintiff's motion for summary judgment, and I would reverse the decision of the trial court to deny Defendant's motion for summary judgment. Contrary to the decision of the majority, I believe the law requires that this Court remand this case to the trial court for entry of summary judgment in favor of Defendant.