DIETZ, Judge.
Defendant Curtis L. Swisher, the Town Manager of the Town of Kernersville, appeals from the trial court's order and writ of mandamus. The trial court directed Swisher to disclose to Plaintiff Kevin Bray the full, unredacted version of internal investigative notes used in the town's decision to terminate Bray's employment with the Kernersville Fire Department.
As explained below, State law requires the town to disclose to Bray all notes and other internal communications used in the official decision to terminate him. N.C. Gen. Stat. § 160A-168(c1)(4). The trial court reviewed the full, unredacted investigative notes in camera and found, based on their contents, that those notes were used in the town's decision to terminate Bray. The unredacted notes that the trial court reviewed in camera are not in the record on appeal-meaning this Court has no way to know what they say. Thus, under our precedent, we must presume that the trial court's finding is supported by the record below. We therefore affirm the trial court's order instructing Swisher to produce the notes to Bray.
We also hold that N.C. Gen. Stat. § 160A-168(c1)(4) provides a right for Bray to review those notes before engaging in the administrative grievance process offered by the town. Because the town failed to produce those notes as the law required, it deprived Bray of a meaningful opportunity to defend himself at the grievance hearing. Accordingly, the trial court properly held that the town violated Bray's due process rights and that Bray is entitled to a new grievance hearing after being provided an opportunity to review all records subject to disclosure under N.C. Gen. Stat. § 160A-168(c1)(4).
Facts and Procedural History
In June 2015, the Town of Kernersville dismissed Kevin Bray from his job with the Kernersville Fire Department. Bray had served the fire department for more than seventeen years and achieved the rank of captain.
According to Bray, his dismissal stemmed from a meeting he had with Town Manager Curtis Swisher and the town human resources director to discuss some of Bray's concerns about the fire department. In response to Bray's concerns, Swisher interviewed other employees and took notes during the interviews. Based on those interviews, Swisher determined that most issues within the department were connected to Bray's "shift" and that Bray was "disliked by everyone in the department," "walks a fine line on policy," and caused "strife and disharmony within the department."
On 4 June 2015, the town terminated Bray's employment for violating the portion of the town's personnel policy that prohibited "[p]articipation in any action that would in any way seriously disrupt the normal operation of the department, or causing disharmony or strife within the department."
On 7 June 2015, Bray requested a grievance hearing through the town's employee grievance procedure. Bray also requested "a complete copy of all [his] personnel files, records and documents" pursuant to N.C. Gen. Stat. § 160A-168 and Wind v. City of Gastonia , 226 N.C. App. 180, 183, 738 S.E.2d 780, 782, aff'd per curiam, 367 N.C. 184, 751 S.E.2d 611 (2013).
The town provided Bray with what it asserted was his "personnel file" but did not include the notes and other documents concerning the investigation that led to Bray's termination. At the grievance hearing on 15 July 2015, Bray again requested that he receive those documents under N.C. Gen. Stat. § 160A-168 and informed the town that he could not adequately defend himself at the grievance hearing without access to the documents that the town relied upon in reaching the decision to terminate him. Swisher, who presided over the hearing as town manager, agreed to hold the hearing in abeyance while the town reviewed Bray's request for the additional records.
On 24 July 2015, Bray received 40 pages of heavily redacted interview notes that memorialized Swisher's interviews with fire department employees. The portions that were unredacted primarily contained statements from unidentified employees indicating that Bray was the source of morale problems within the fire department. After receiving those redacted notes, Bray again objected and informed the town that he could not fairly defend himself at the grievance hearing without receiving the full version of the interview notes on which the town relied in its decision to terminate him. He also, again, informed the town that he was entitled to receive copies of those unredacted documents under N.C. Gen. Stat. § 160A-168. This time, however, the town refused to reconsider and proceeded with the grievance hearing. After the hearing, Swisher informed Bray by letter that he was upholding Bray's termination. The town's grievance procedure provided no further right of appeal or judicial review.
On 17 December 2015, Bray and the Kernersville Professional Fire Fighters Association filed a complaint and petition for writ of mandamus to compel Swisher to provide an unredacted copy of the notes and to conduct a new grievance hearing. The trial court held a hearing and reviewed a copy of the unredacted interview notes in camera . On 3 June 2016, the trial court issued an order and writ of mandamus, ordering Swisher to provide Bray with "all of the notes, preliminary drafts and internal communications relied upon or concerning the decision to terminate his employment" and, specifically, "pages of notes that were in the unredacted materials reviewed by the Court." The trial court also held that the town's failure to provide Bray with a copy of those documents during the grievance hearing process-documents to which he was entitled by law-violated Bray's due process rights. The court ordered the town to conduct a new grievance hearing. Swisher, in his official capacity as town manager, timely appealed.
Analysis
Swisher argues that the trial court erred both by ordering the town to provide an unredacted copy of the notes to Bray and by ordering the town to conduct a new grievance hearing. We address each argument in turn.
I. Order to Produce the Unredacted Documents
Swisher first argues that the trial court erred by ordering him to produce an unredacted copy of interview notes made during an investigation that led to Bray's release from employment.
At the outset, neither party disputes that the notes at issue in this appeal are public records, in the sense that they were prepared by Swisher, the town manager, as part of his official duties. As a result, absent a statutory exemption, these records would be subject to our State's public record laws. See N.C. Gen. Stat. § 132-6. But the parties also agree that the notes are (or, at least, contain) employee personnel records that generally are exempt from public record requests. N.C. Gen. Stat. § 160A-168. The crux of this case is whether the notes fall within any of the exceptions in Section 160A-168 that permit disclosure to Bray or to the Fire Fighters Association.
We begin our analysis with Section 160A-168(c)(1), which states that an employee "may examine all portions of his personnel file except (i) letters of reference solicited prior to employment, and (ii) information concerning a medical disability, mental or physical, that a prudent physician would not divulge to his patient." The term "personnel file" is defined in broad terms to include "any information in any form gathered by [the town] with respect to that employee." N.C. Gen. Stat. § 160A-168(a) (emphasis added). Thus, as the parties appear to agree, the notes at issue in this case fall within this broad definition of personnel file.
But Section 160A-168(c1) creates an exception to the general rule in subsection (c). It provides that a town may choose not to disclose "[n]otes, preliminary drafts and internal communications concerning an employee" unless those documents were used in a personnel decision:
(c1) Even if considered part of an employee's personnel file, the following information need not be disclosed to an employee nor to any other person:
...
(4) Notes, preliminary drafts and internal communications concerning an employee. In the event such materials are used for any official personnel decision, then the employee or his duly authorized agent shall have a right to inspect such materials.
N.C. Gen. Stat. § 160A-168(c1)(4).
At the hearing below, the trial court examined the parties' sworn statements in their verified pleadings and also reviewed in camera the unredacted notes sought by Bray. Based on that in camera review, the trial court found that Swisher used the unredacted notes as part of the decision to terminate Bray from his employment with the department. This, in turn, meant those notes were subject to disclosure to Bray under subsection (c1)(4):
Based on my in camera review of the unredacted notes, it appears that there were references to Mr. Bray that were redacted in the materials provided to him. It also appears that there are references in the notes to his company or crew and its activities. There were also additional pages in the unredacted materials that were not provided to Mr. Bray. Additionally, while the interviews did address a number of possible problems in the Fire Department, it was as a result of that investigation and the interviews, that Defendant Swisher made the decision to terminate Plaintiff Bray's employment. Thus the materials were relied upon in making the decision to terminate Plaintiff Bray's employment.
Swisher contends that this finding is not supported by the record because "there is no evidence the redacted notes had any role in the decision to terminate Mr. Bray or would have absolved him from termination." We are unable to review this contention on appeal. As the parties conceded at oral argument, the appellate record does not contain a copy of the unredacted notes that the trial court reviewed in camera . As a result, this Court has no way to know what the redacted portions of those notes say. For example, the notes might contain a clear statement that the town intends to rely on their entire contents to terminate Bray's employment. Or the redacted notes might contain material wholly unrelated to Bray. This Court can only speculate, which prevents us from reviewing the trial court's finding. Instead, we must follow the long-standing rule that "[w]here the record is silent on a particular point, we presume that the trial court acted correctly." Lawing v. Lawing , 81 N.C. App. 159, 162, 344 S.E.2d 100, 104 (1986).
Indeed, this case is essentially indistinguishable from the many cases in which a transcript of testimony is missing from the appellate record. In those circumstances, this Court routinely holds that it must accept the trial court's findings because the Court cannot review a lower court's factual determination without seeing a record of what the trial court relied upon. See, e.g. , Bodie v. Bodie , 239 N.C. App. 281, 286, 768 S.E.2d 879, 882 (2015) ; Drouillard v. Keister Williams Newspaper Servs., Inc. , 108 N.C. App. 169, 173, 423 S.E.2d 324, 327 (1992).
Accordingly, we cannot review the trial court's determination that the redacted portions of the notes "were relied upon in making the decision to terminate Plaintiff Bray's employment." And, because that finding supports the trial court's conclusion that the records are subject to disclosure under N.C. Gen. Stat. § 160A-168(c1)(4), we must affirm this portion of the trial court's order.
We note, however, that the trial court's order refers to "Plaintiff" in the singular and we interpret the court's order as applying only to Bray, not to the Fire Fighters Association. Section 160A-168(c1)(4), by its plain terms, only permits "the employee or his duly authorized agent" to examine the documents. Nothing in the record indicates that Bray authorized the Fire Fighters Association to act as his duly authorized agent. Thus, the trial court properly ordered that Swisher produce a copy of the records for review only by Bray, and not by the Fire Fighters Association.[1]
II. Order to Conduct a New Grievance Hearing
Swisher next argues that the trial court erred by ordering a new grievance hearing because, having found that Bray was entitled to receive the full, unredacted notes, the original hearing (where Bray did not have access to the notes) "did not meet the requirements of due process." We again conclude that the trial court's order is appropriate.
Somewhat strangely, neither party in this appeal addresses the central legal question necessary to resolve this issue: does N.C. Gen. Stat. § 160A-168(c1)(4) provide a right for an employee facing an adverse personnel decision to receive all documents covered by the statute in time to use those documents during any applicable administrative review or grievance process? In other words, is the intent of this provision to ensure that employees have access to these documents to defend themselves against an adverse personnel decision, or merely to ensure that those employees ultimately receive them?
Ordinarily, our analysis of this type of issue would begin and end with the plain language of the statute. Correll v. Div. of Soc. Servs. , 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). But the statutory language itself provides no guidance on this question. Likewise, Wind v. City of Gastonia , the only decision from our State's appellate courts addressing this statutory language, offers no direction. 226 N.C. App. 180, 183, 738 S.E.2d 780, 782, aff'd per curiam, 367 N.C. 184, 751 S.E.2d 611 (2013). And, as is often the case with state legislation, we have no legislative history or other extrinsic statutory interpretation tools to which we could turn.
But we observe, as the dissent in Wind did, that the statute is part of legislative line-drawing to resolve two competing interests: the need of government "to maintain a level of confidentiality in its dealings with internal employment matters" and "an employee's interest to confront and address information that is used in official decisions affecting his employment." Id. at 197, 738 S.E.2d at 791 (Dillon, J., concurring in part and dissenting in part).
With those interests in mind, it would make little sense to interpret the statute as providing only a right to eventually receive the records, rather than a right to receive them for use in challenging the official personnel decision that made the records subject to disclosure in the first place. In both scenarios the government's interest in maintaining the confidentiality of internal investigations is undermined, but only in the latter case is the employee's interest in confronting the official personnel decision advanced. Accordingly, we interpret N.C. Gen. Stat. § 160A-168(c1)(4) as providing a statutory right to receive all documents used in an official personnel decision during any applicable administrative review or grievance process (provided, of course, that the employee requests those documents at a reasonable time before or during the grievance process, as happened here).
Having concluded that Bray had a statutory right to receive all documents subject to disclosure under N.C. Gen. Stat. § 160A-168(c1)(4) in advance of his grievance hearing, we agree with the trial court that Bray's due process rights were violated. When the State chooses to afford procedural rights-such as a grievance hearing for employees-it must ensure that the procedure comports with due process. Dobrowolska v. Wall , 138 N.C. App. 1, 12, 530 S.E.2d 590, 598 (2000). This requires the state to provide an opportunity to be heard "at a meaningful time and in a meaningful manner." Peace v. Emp't Sec. Comm'n of North Carolina , 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998). Here, the town deprived Bray of that right by refusing to turn over documents that Bray had a statutory right to receive in order to mount an effective defense against the town's adverse personnel decision.
Accordingly, we hold that the trial court properly found that the town's grievance hearing did not comport with due process. We therefore affirm the trial court's order instructing the town to conduct a new hearing after providing Bray with the documents to which he is entitled under N.C. Gen. Stat. § 160A-168(c1)(4).[2]
Conclusion
For the reasons stated above, we affirm the trial court's order.
AFFIRMED.
Report per Rule 30(e).
Judges ELMORE and TYSON concur.

The parties frame the dispute over the association's participation in this lawsuit as one concerning standing in the jurisdictional sense, and focus their argument to the doctrine of associational standing. This is a strawman. The association plainly satisfies our State's associational standing requirements and thus has jurisdictional standing to seek access to public records germane to its members' interests. Creek Pointe Homeowner's Ass'n, Inc. v. Happ, 146 N.C. App. 159, 165, 552 S.E.2d 220, 225 (2001). The association is not entitled to those documents not because it lacks standing to request them, but because the statute only permits their disclosure to the employee or his authorized agent, not to other interested parties. N.C. Gen. Stat. § 160A-168(c1)(4).

Swisher asserts that the trial court has no authority to order a new grievance hearing through a writ of mandamus. We do not construe the trial court's order as doing so, and thus reject this argument. The trial court issued a writ of mandamus requiring disclosure of the full, unredacted copy of the interview notes and all other records covered by N.C. Gen. Stat. § 160A-168(c1)(4). A writ of mandamus is an appropriate means to compel the town to produce these records which the law requires it to produce. James Walker Mem'l Hosp. v. City of Wilmington, 235 N.C. 597, 600, 70 S.E.2d 833, 835-36 (1952). The trial court also determined, as a matter of law, that the town's failure to turn over these important documents as the law requires deprived Bray of his due process rights at the grievance hearing. The trial court's order crafted a remedy for that constitutional violation, which our Supreme Court permits trial courts to do. Corum v. Univ. of North Carolina, 330 N.C. 761, 784, 413 S.E.2d 276, 290 (1992) ("As stated, the common law provides a remedy for the violation of plaintiff's constitutionally protected right.... It will be a matter for the trial judge to craft the necessary relief.").